**UNITED STATES of America**

v.

**Wesley C. PAXSON, Sr., Appellant.**

**No. 87–3094.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 19, 1988.
Decided Nov. 18, 1988.

See also, 11th Cir., 859 F.2d 1559.

Emmet J. Bondurant, II, with whom Michael A. Sullivan, Atlanta, Ga., Worth Rowley, and Neal L. Thomas, Washington, D.C., were on the brief, for appellant.

Laura Heiser, Atty., Dept. of Justice, with whom Kenneth G. Starling, Deputy Asst. Atty. Gen., and John J. Powers, III, Atty., Dept. of Justice, Washington, D.C., were on the brief, for appellee.

Before EDWARDS, BUCKLEY, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Defendant Paxson ("Paxson" or "appellant"), an executive of an electrical contracting company, appeals from his conviction of making false declarations in violation of 18 U.S.C. § 1623 (1982) and obstruction of justice in violation of 18 U.S.C. § 1503 (1982). Both charges arise from his testimony before a grand jury empaneled in the District of Columbia to investigate violations of the Sherman Act, 15 U.S.C. §§ 1–7 (1982), by electrical contractors in various parts of the country. Paxson raises a variety of objections to his conviction, attacking, *inter alia,* the materiality of his statements, the adequacy of the District Court's instructions to the jury, the admission of certain hearsay evidence, the quashing of a subpoena *duces tecum,* and the propriety of an obstruction of justice charge in the face of a prior grant of immunity. Paxson also claims a violation of his due process rights by prosecutorial misconduct on the part of the attorneys for the United States. Finding none of Pax-

son's arguments to state reversible error, we affirm the judgment of conviction.

## I. MATERIALITY

Paxson's first conviction is under 18 U.S.C. § 1623, which declares, in pertinent part, that

> (a) Whoever under oath ... in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false *material* declaration ... shall be [punished according to the statute].

*Id.* (emphasis added). At a hearing out of the presence of the jury, the trial court ruled that Paxson's declarations were material as a matter of law. Paxson alleges two errors in this ruling: first, that the question of materiality should have been treated as an essential element and submitted to the jury rather than being resolved by the court; and second, that the particular declarations should have been ruled immaterial as a matter of law. We, however, conclude that the District Court was entirely correct as to both questions.

### A. *For the Judge or the Jury?*

■ The District Judge, in taking from the jury the question of materiality, followed the well-established law of this Circuit. *See United States v. Bridges,* 717 F.2d 1444, 1448 (D.C.Cir.1983), *cert. denied,* 465 U.S. 1036, 104 S.Ct. 1310, 79 L.Ed.2d 708 (1984). This rule is supported by the Supreme Court's statement that "the *materiality* of what is falsely sworn, when an element in the crime of perjury, is one for the court." *Sinclair v. United States,* 279 U.S. 263, 298, 49 S.Ct. 268, 273, 73 L.Ed. 692 (1929) (emphasis added). While appellant argues rightly that the Supreme Court's pronouncement on this subject is dictum, as we noted in *Bridges,* "[t]he unanimous verdict of the [Circuit] courts has been that materiality is a question of law to be determined by the trial judge." 717 F.2d at 1448.[1]

---

1. *Bridges* catalogued decisions from the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Tenth Circuits to that effect. *Id.* at n. 18. Later cases from the First, Ninth, and Eleventh Circuits have since completed the role of unanimous Courts of Appeal. *United States v. Colla-*

Paxson's argument that we should ignore this unbroken chain of precedent is founded on his contention that the above-quoted dictum of *Sinclair v. United States* has been impliedly rejected by the Supreme Court's ruling that a defendant has a Sixth Amendment right of trial by jury as to each essential element of an offense. In support of this unremarkable proposition, appellant cites, *inter alia, Cabana v. Bullock*, 474 U.S. 376, 384, 106 S.Ct. 689, 696, 88 L.Ed.2d 704 (1986); *Francis v. Franklin*, 471 U.S. 307, 313, 105 S.Ct. 1965, 1970, 85 L.Ed.2d 344 (1985); and *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). The difficulty with this argument is that none of the cases cited, nor any other which we have found, includes materiality as an essential element which must be submitted to a jury. We cannot accept appellant's argument that *Cabana* has eroded our rule from *United States v. Bridges* or the High Court's strong dictum in *Sinclair v. United States*. This is particularly true since on this point *Cabana* relied on no authority unavailable to us at the time of *Bridges*. Numerous Supreme Court cases to the same effect were available to us at the time of the *Bridges* decision. *See, e.g., Winship*, 397 U.S. at 364, 90 S.Ct. at 1068; *Sandstrom v. Montana*, 442 U.S. 510, 523, 99 S.Ct. 2450, 2459, 61 L.Ed.2d 39 (1979); *Mullaney v. Wilbur*, 421 U.S. 684, 696–701, 95 S.Ct. 1881, 1888–91, 44 L.Ed.2d 508 (1975). These cases already taught that essential elements are for the jury; none of them taught that materiality is anything other than a question of law for the court. The cases arising after *Bridges*, including *Cabana*, add nothing to the teachings available to us at the time of our *Bridges* decision, and *Bridges* controls this case.

Paxson argues that the trial court should nevertheless have instructed the jury that materiality was an essential element. Not only would this seem erroneous under *Bridges* and the other authority, but Pax-

son is raising this issue for the first time on appeal. At trial the defense conceded that materiality "is a question for the court that does not go before the jury." Joint Appendix ("J.A.") at 238. It is well established that "[n]o party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict." Fed.R.Crim.P. 30. Likewise, our case law is clear that in the absence of contemporaneous objection we "consider only whether the jury instructions were plainly erroneous." *United States v. Campbell*, 684 F.2d 141 (D.C.Cir.1982). We, therefore, grant this point no further consideration. In light of the rule of *Bridges* discussed above, it appears that the trial court committed no error, and certainly no plain error.

## B. *The Materiality of the Statement*

■ Appellant attacks not only the court's ability to resolve the materiality question, but also its decision that the statements in question were, in fact, material. The statements in question concerned Paxson's possible involvement in the allegedly rigged bidding on a waste water treatment plant in Atlanta, Georgia, called the "Snapfinger Project." Paxson contends that the trial court should have ruled that the statements could not be material as a matter of law. This argument begins with the basic proposition that in order for a false declaration before a grand jury to be criminal under 18 U.S.C. § 1623, it must be material to a subject the grand jury was lawfully investigating. Otherwise put, "a [false declarations] conviction may not be based on testimony not material to any proper inquiry of a grand jury." *United States v. Koonce*, 485 F.2d 374, 380 (8th Cir.1973).[2] Paxson contends that the present declarations could not be material since the grand jury for the District of Columbia had no jurisdiction to inquire into

*tos*, 798 F.2d 18 (1st Cir.1986); *United States v. Prantil*, 764 F.2d 548 (9th Cir.1985); and *United States v. Molinares*, 700 F.2d 647 (11th Cir.1983).

2. The quoted language from *Koonce* referred to "perjury" convictions rather than "false declarations" convictions, but the actual conviction in *Koonce* was under the same false declarations statute that we construe. 18 U.S.C. § 1623.

crimes committed or alleged to have been committed in Georgia.

Certainly it is true, and the government concedes, that a federal grand jury in one district "has no authority to inquire into offenses committed wholly in another federal district." *United States Dep't of Justice Antitrust Grand Jury Prac. Manual* at 35 (1973). The Antitrust Manual cites the authority of *Brown v. United States*, 245 F.2d 549 (8th Cir.1957), upon which Paxson now relies. In *Brown*, the Eighth Circuit held that a district court erred in not dismissing on grounds of lack of materiality an indictment charging false testimony before a grand jury of the District of Nebraska where the testimony in question concerned events in Missouri. The Eighth Circuit noted that "the test of materiality is whether the false testimony was capable of influencing the tribunal on the issue before it." 245 F.2d at 555 (*quoting United States v. Icardi*, 140 F.Supp. 383, 388 (D.D. C.1956)). Paxson argues that we should follow the same course and find that the District Court in the present case erred in not dismissing on grounds of lack of materiality this indictment for false testimony before a District of Columbia grand jury where the testimony concerned events in the state of Georgia.

While appellant's argument has facial appeal, the facts before the District Court in the present case are distinguishable from those before the Eighth Circuit in *Brown*. In *Brown* it seems that the grand jury, under the guidance of an attorney especially appointed by the Attorney General to supersede the United States Attorney, was operating as if under a "roving commission" investigating matters with no real connection to the district of their sitting. 245 F.2d at 555. No attempt was made at trial to claim that the conspiracy under investigation by the grand jury had any link to Nebraska. Indeed, the Eighth Circuit observed that "[t]he purpose [of the grand jury investigation] was to get [appellant] indicted for perjury and nothing else." *Id.* Conversely, in the present case, as Judge Bryant properly noted in the District Court proceedings, "the grand jury in the District of Columbia was investigating some pretty broad ... matters. They were investigating a practice of bid-rigging by a lot of contractors throughout the country, some of them based [in the District of Columbia], several of them operating with people [in the District]." J.A. at 194. At the time, the grand jury was investigating allegations of a broad-ranging conspiracy of industry-wide bid-rigging by electrical contractors, some of whom were headquartered in or operated in the District of Columbia. Indeed, some evidence indicated that the Snapfinger Project involved a payoff within the District of Columbia. Moreover, while holding that the district court erred in not dismissing, the Eighth Circuit itself recognized that

> the broad investigatory powers of a grand jury, as an arm or agency of the court by which it is appointed, extend (in its efforts to uncover criminal offenses prohibited by federal law) to an inquiry into the facts that occurred in another district provided that such inquiry has to do with relevant matters. For instance, if a conspiracy is what the inquiry is directed at, the acts and conduct of the alleged conspirators that may have occurred in a district other than that where the grand jury is sitting may be gone into.

*Brown*, 245 F.2d at 554.

Many cases have recognized that hindsight is not the proper perspective for discerning the limits of a grand jury's investigative power. It must pursue its leads before it can know its final decisions. *See, e.g., United States v. Doulin*, 538 F.2d 466, 470 (2d Cir.), *cert. denied*, 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976), and cases cited therein. Thus, courts have upheld false testimony convictions where the statements in question concern offenses ultimately not prosecutable because the statute of limitations had expired, *United States v. Picketts*, 655 F.2d 837, 841 (7th Cir.), *cert. denied*, 454 U.S. 1056, 102 S.Ct. 602, 70 L.Ed.2d 592 (1981), or because prosecution for the crime investigated might violate the witness' right to a speedy trial, *United States v. Nixon*, 634 F.2d 306, 310 (5th Cir.), *cert. denied*, 454 U.S. 828, 102

S.Ct. 120, 70 L.Ed.2d 103 (1981), or because the grand jury lacked power to indict under the terms of the relevant substantive statute, *Doulin*, 538 F.2d 466.

While Paxson's argument that the prosecuting authorities at the time of Paxson's testimony should have known that any prosecution ultimately would lie in another district is a colorable one, it affords no basis for our second-guessing the careful determination of Judge Bryant that the matters inquired of were, in fact, material to a proper matter of investigation by the grand jury. Appellant's materiality arguments are without merit.

## II. THE HEARSAY EVIDENCE

■ Paxson next assigns as error the trial court's admission over objections of testimony by a witness, William Kale, who testified that one Robert Lassetter had told him in 1980 that the Snapfinger job had been rigged. The government offered this testimony as part of its evidence of the falsity of Paxson's declarations to the grand jury.[3] The trial court ruled that Kale's testimony concerning Lassetter's extra-judicial statements was admissible under Federal Rule of Evidence 801(d)(2)(D), which declares certain extra-judicial statements not to be hearsay, including "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Paxson argues that the Lassetter statement does not fit within the requirements of the rule because Lassetter was not an agent of Paxson personally, but rather a co-employee of the same corporation, Paxson Electric. However, to allow the objection on this basis requires a hyper-technical construction of the rule. Lassetter had been vice president of Paxson Electric for twenty-five years and reported directly to Paxson, who, as president of the corporation, made key decisions for it. Paxson owned the overwhelming majority of stock of Paxson

Electric, a privately held family corporation. As the Tenth Circuit has noted, the admission of a statement by a corporate employee against his corporate superior rather than against the corporation itself "may create a loophole in the hearsay rule through which evidence not contemplated by the authors of Rule 801 could be admitted." *United States v. Young*, 736 F.2d 565, 567 (10th Cir.1983) (*per curiam*), *rev'd on other grounds*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). However, as the *Young* court further noted, "if the factors which normally make up an agency relationship are present, the evidence should not be excluded simply because the statement is offered against a corporate officer rather than the corporation." *Id.* at 568. Given the factual predicate set forth above, that is, the nature of the relationship between Paxson and Lassetter, and between each and the corporation, we find as did the Tenth Circuit in *Young*, that the factors normally making up an agency relationship are present and that the evidence was properly admitted. *Id.*

Paxson next argues that there was no foundation evidence that Snapfinger bid-rigging was "a matter within the scope of [the declarant's] agency or employment" as required under Rule 801(d)(2)(D). However, there was sufficient evidence of record to support the trial court's determination that the scope of Lassetter's agency included talking to a third party or parties about the rigging of the Snapfinger bids. J.A. at 287–91, 625–38, 855–62. Finally, Paxson contends that at the time of the statement, Lassetter was not acting for Paxson Electric but for a new corporation called "C.C.C." But the record supports a conclusion that C.C.C. was formed and controlled by Paxson and his family corporation with a principal purpose of obtaining the contract on the Snapfinger Project. In fact, it appears that Lassetter remained a vice president of Paxson Electric while

---

**3.** Paxson's declarations were to the effect that the project was not the subject of rigged or agreed bids. Paxson was convicted in the Northern District of Georgia, as were his company (Paxson Electric), four other companies,

and an executive of one of those companies for a violation of the Sherman Act and two counts of mail fraud in connection with the rigging of that project.

managing C.C.C.'s job at Snapfinger. Thus, the same theory of agency set forth above applies, and the trial court's admission of the evidence was not error.

### III. THE QUASHED SUBPOENA

Bernard Trepte, an executive of one of the other corporations involved in the Snapfinger bidding, was a key witness against Paxson. Paxson's counsel had become aware in the Georgia antitrust trial that Trepte's counsel, Jerome Hochberg, had been present during interviews of Trepte conducted by government attorneys. Paxson's counsel, believing that Trepte's versions of the facts during the earlier interviews were inconsistent with his grand jury and trial testimony, caused a subpoena *duces tecum* to be served on Hochberg calling for the production of "all notes of interviews between Bernard A. Trepte and representatives of the Antitrust Division, U.S. Department of Justice (including all documents referred to therein)." Hochberg refused to produce the requested documents and moved to quash the subpoena on the ground that the documents called for were protected by the attorney-client privilege and the work product doctrine. The trial court granted Hochberg's motion and quashed the defendant's subpoena. Paxson now asserts that this ruling was erroneous.

Paxson asserts that the notes he seeks were Hochberg's recordation of communications involving Trepte, Hochberg, and Department of Justice attorneys. Thus, Paxson asserts, the attorney-client privilege was destroyed by the presence of third parties. *See United States v. Simpson*, 475 F.2d 934 (D.C.Cir.), *cert. denied*, 414 U.S. 873, 94 S.Ct. 140, 38 L.Ed.2d 91 (1973).[4] Whether or not Paxson is correct about the unavailability of the attorney-client privilege, it appears that the District Court properly held the documents to be protected by the work-product doctrine. Hochberg's unchallenged representation to the trial court was to the effect that his

notes of the interviews were not verbatim but rather contained "assessments, thought processes, analyses and strategy of counsel," and reflected his judgment on how best to advise and protect the interest of his client.

Neither party has cited any case applying the work-product privilege to facts paralleling those in this record. Typically this privilege arises when an adversary seeks disclosure of documents prepared by an attorney, as in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), or when the government seeks access to such documents, either in administrative investigations, *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), or in grand jury investigations, *In re Sealed Case*, 676 F.2d 793 (D.C.Cir.1982). However, we think that the principles laid down in the above-cited cases are perfectly applicable to the facts present here. In the *Hickman* case the Supreme Court held that the discovery provisions of the Federal Rules of Civil Procedure, Rules 26–37, did not entitle an opposing litigant to "invad[e] the privacy of an attorney's course of preparation." *Hickman*, 329 U.S. at 512, 67 S.Ct. at 394. *Upjohn* expanded on the work-product doctrine as it had evolved after *Hickman* and applied the same in the context of an IRS summons enforcement proceeding. In that decision, Justice (now Chief Justice) Rehnquist noted that Federal Rule of Civil Procedure 26 was amended in 1970 to take into account the policy underlying the *Hickman* decision. As the rule now reads, trial preparation material may be discovered

only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall

---

4. The subpoena *duces tecum* in fact also sought production of debriefing notes made by Hochberg after his client's appearances at grand juries. Department of Justice attorneys were not present at those conferences. Paxson apparently has abandoned any assignment of error with regard to the District Court's quashing of that portion of the subpoena *duces tecum*.

protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed.R.Civ.P. 26(b)(3). The Court further noted that the *Hickman* policy, the rule embodying it, and the further decisions developing it (*e.g., United States v. Nobles*, 422 U.S. 225, 236–40, 95 S.Ct. 2160, 2169–71, 45 L.Ed.2d 141 (1975)), established that "[f]orcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes." 449 U.S. at 399, 101 S.Ct. at 687 (citations omitted).

Indeed, *Upjohn* observed that "some courts have concluded that *no* showing of necessity can overcome protection of work product which is based on oral statements from witnesses." *Id.* at 401, 101 S.Ct. at 688 (emphasis in original) (*citing In re Grand Jury Proceedings*, 473 F.2d 840, 848 (8th Cir.1973); and *In re Grand Jury Investigation*, 412 F.Supp. 943, 949 (E.D. Pa.1976)).

While the Supreme Court in *Upjohn* did not adopt a rule of absolute protection for an attorney's notes and memoranda, neither did it reject such a rule. The Court simply found it unnecessary to reach the question of the absolute protection, holding instead that discovery of such material required "a far stronger showing of necessity and unavailability by other means than was made by the Government ... in this case." 449 U.S. at 402, 101 S.Ct. at 689.

The record before us discloses that Paxson made no such strong showing in the trial court. Indeed, Paxson's counsel conducted an examination of Trepte that evidenced extensive knowledge of the alleged prior inconsistencies from whatever source he may have obtained the same. Paxson in fact offered the District Court virtually no showing upon which to base the requested invasion of Trepte's and Hochberg's important rights.

Paxson further argues that the material sought is not within the work-product doctrine because Hochberg "did not prove as

he must, that 'the primary motivating purpose behind the creation of [the memoranda was] to aid in possible future litigation.'" Brief for Appellant at 45 (bracketed material in original; citation omitted). This argument is an unusually lame one. The entire record is to the effect that Trepte retained Hochberg only for the purpose of protecting himself against criminal exposure in an ongoing antitrust investigation and any ensuing litigation.

Finally, Paxson objects that the trial court should have examined the memoranda *in camera.* Paxson made no such suggestion to the trial court at the time of the court's ruling, and we will not hear this suggestion now. *Cf. United States v. Campbell*, 684 F.2d 141, 148 (D.C.Cir.1982) (alleged errors in jury instruction must "be brought to the attention of the trial judge in order to provide an opportunity for their immediate correction").

## IV. PROSECUTORIAL MISCONDUCT

■ Paxson next asserts that the trial court erred in denying his motion to dismiss the indictment because of the prosecutor's failure to divulge exculpatory evidence, intentional introduction of false testimony, and other related prosecutorial misconduct. This argument is a factually complex one, and the evidence before the District Court was subject to several interpretations. Before us, both in briefs and oral argument, counsel for both sides seemed so intent on arguing the implications of the evidence favorable to their respective sides that neither has presented a coherent, well-organized, and neutral statement of the relevant facts. By gleanings from the record and the two arguments, it appears that at least the following series of events occurred.

The government attorneys developed a case against Paxson, both as to the substantive violations tried in Georgia and the false declarations charges tried in the District of Columbia, which depended in large part on the truth of the testimony of Trepte. Trepte's testimony concerning the rigging of the Snapfinger Project bid included his swearing that his participation in

the collusion was authorized by his superior, Paul Murphy. In fact, the approval from Murphy described by Trepte could not have occurred since Murphy was out of the country in Greece or other overseas locations at all times relevant to the fixing of the Snapfinger bids. For three or four years, government counsel had possession of Murphy's calendar, showing him to have been on vacation, and yet they did not disclose the same to defense counsel—even in the face of *"Brady* motions" in the antitrust and false declarations cases. In April, 1987, five months before Paxson's false declarations trial, Murphy unequivocally denied participation in the Snapfinger Project, including authorization of Trepte's participation. Murphy's denial came in a debriefing conducted by the prosecutors in Paxson's case, following Murphy's bargained plea to charges relating to other projects and his own false statements. In that debriefing, Murphy candidly admitted having participated in other rigged bids and having given false testimony regarding projects other than Snapfinger. The government has offered no reason why in that context Murphy would have falsely denied involvement in Snapfinger. In the same conversation Murphy also told the prosecutors that his calendar and passport would prove he was in Greece or England from August 25 to September 18, 1979, the period in which the Snapfinger bidding had taken place. The prosecutors disclosed none of these pieces of evidence impeaching the testimony of Trepte until Paxson independently raised the question at the false declarations trial.

It is by now basic constitutional criminal law "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). So well known is this rule that courts and the bar refer to exculpatory evidence in the hands of the prosecution by the shorthand term *"Brady* evidence." Further, "[w]hen the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule." *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972) (*quoting Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959)).

While government counsel both at trial and in this court have offered niggling excuses for their uncertainty as to the accuracy of Murphy's statements or the inaccuracy of Trepte's, nowhere have they offered any convincing reason why they did not simply make disclosure of what they knew of this potentially impeaching evidence of their principal witness, Trepte. Nonetheless, while we can no more commend the prosecutor's apparent disregard of the *Brady* rights of appellant than did the District Court, neither do we find that the District Court erred in refusing to grant the motion to dismiss. Under the controlling authorities, a new trial is required only if the violation could " 'in any reasonable likelihood have affected the judgment of the jury.' " *Giglio,* 405 U.S. at 154, 92 S.Ct. at 766 (*quoting Napue,* 360 U.S. at 269, 79 S.Ct. at 1177). In the instant case, the District Court, after a careful and thorough examination of the subject, determined that the defense had in fact received the evidence in time to make effective use of it, and, indeed, had based a thorough and effective examination of Trepte on the very evidence as to which this question is now raised. As we have previously held, "[t]he clearly erroneous standard ordinarily governs review of a judge's findings in a criminal case on issues other than the defendant's guilt." *United States v. Meyer,* 810 F.2d 1242, 1244, *reh'g granted en banc,* 816 F.2d 695, *reh'g denied en banc,* 824 F.2d 1240 (D.C.Cir.1987). Further, "[t]he choice of remedy for governmental misconduct rests within the sound discretion of the lower court; an appellate court may reverse an order remedying such misconduct only if the order constitutes an abuse of discretion." 810 F.2d at 1245. Judge Bryant's conclusion that Paxson suffered no prejudice by his late access to the evidence is not only am-

ply, but indeed overwhelmingly supported by the evidence, and we will not disturb it.

This concludes Paxson's allegations of error applicable to the false declarations charge.[5] Having found no error warranting reversal, that judgment of conviction must stand.

## V. THE OBSTRUCTION OF JUSTICE CONVICTION

Paxson mounts a separate attack on his conviction under Count 2 of the bill of indictment, which related the same facts underlying Count 1 and charged that by giving false testimony, Paxson obstructed and impeded the due administration of justice, specifically the grand jury's investigation, in violation of 18 U.S.C. § 1503. Paxson contends that the District Court erred in failing to grant his motion to dismiss this charge, because his grand jury testimony was given pursuant to a grant of immunity under 18 U.S.C. § 6002 (1982), which provides that "no testimony ... compelled under the order ... may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order."

Paxson argues that this statute must be construed to bar an obstruction of justice prosecution making use of the testimony. He contends that the phrase "or otherwise failing to comply with the order," must refer to contempt. Under his view, then, the exclusive list of exceptions to the bar of prosecutions is threefold: perjury; giving a false statement; and contempt. Thus, Paxson contends, under the doctrine of "expressio unius est exclusio alterius" (to express one thing is to exclude others), because obstruction of justice is not among the three, it falls outside the exception, and consequently prosecution is barred, and,

therefore, the charge should have been dismissed.

This question is a new one in this Circuit. A district court in another circuit considered the question exhaustively in *United States v. Caron*, 551 F.Supp. 662 (E.D.Va. 1982), *aff'd without opinion*, 722 F.2d 739 (4th Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984). The *Caron* court rejected the same argument made here, reasoning that a grant of immunity looks backward, protecting the defendant against prosecution for acts already committed. "Here, the alleged obstruction of justice, if it occurred at all, had to have taken place following the Court's granting defendant immunity under § 6002." 551 F.Supp. at 672. Thus, the *Caron* court reasoned, the statutory phrase "or otherwise failing to comply with the order" should be construed to include not only contempt but also other criminal acts committed in the failure to give the truthful testimony sought by the immunity order, including obstruction of justice. *Id.* Two of our sister circuits have approved the *Caron* reasoning, though in factually distinct circumstances. *United States v. Brimberry*, 779 F.2d 1339, 1346–47 (8th Cir.1985) (allowing prosecution for obstruction of justice following immunity afforded under a plea agreement); *United States v. Black*, 776 F.2d 1321, 1326–27 (6th Cir. 1985) (same).

The government contends that we should also be persuaded by the *Caron* reasoning, particularly in light of the Supreme Court's statement in *United States v. Apfelbaum*, 445 U.S. 115, 122, 100 S.Ct. 948, 952, 63 L.Ed.2d 250 (1980), that "[t]he legislative history of § 6002 shows that Congress intended the perjury and false-declarations exception to be interpreted as broadly as constitutionally permissible."[6]

---

**5.** We are aware that we have not discussed each detail of each allegation of error argued by Paxson, but we have considered all. No other allegation warrants separate discussion and certainly not reversal.

**6.** The *Apfelbaum* Court noted that the statute derived from a proposal for a general use im-

munity statute to confer an immunity "'confined to the scope required by the Fifth Amendment.'" 445 U.S. at 122–23, 100 S.Ct. at 953 (*quoting* Second Interim Report of the National Commission on Reform of Federal Criminal Laws, March 17, 1969, *reproduced in* Hearings on S. 30, 91st Cong., 1st Sess. 292 (1969)).

We need not decide that question in the present case. Judge Bryant imposed a concurrent sentence as to the two counts. As we have upheld the judgment on Count 1, it is within our discretion to decline review of the issues raised by the concurrent sentence. *See Barnes v. United States,* 412 U.S. 837, 848 & n. 16, 93 S.Ct. 2357, 2364 & n. 16, 37 L.Ed.2d 380 (1973). In the exercise of our discretion we decline to consider this question of statutory construction.

## VI. CONCLUSION

For the reasons set forth above, we find no reversible error and therefore affirm the judgment of the District Court.