**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gerald WIEDYK, Defendant–Appellant.**

No. 94–2342.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 12, 1995.

Decided Dec. 14, 1995.

Rehearing and Suggestion for Rehearing
En Banc Denied Feb. 2, 1996.

Jennifer J. Peregord (argued and briefed), Office of U.S. Attorney, Detroit, MI, for Plaintiff-Appellee.

Steven F. Fishman (argued and briefed), Detroit, MI, for Defendant-Appellant.

Before: KENNEDY and MOORE, Circuit Judges; POTTER,* District Judge.

KENNEDY, Circuit Judge.

Defendant Gerald Michael Wiedyk appeals his conviction for receiving kickbacks in his capacity as an officer of an employee benefit plan and for making false statements in relation to documents required by the Employment Retirement Income Security Act of 1974 ("ERISA"), 18 U.S.C. §§ 1954, 1027. Defendant argues that the trial judge erred in admitting prejudicial hearsay and in failing to grant a mistrial based on prosecutorial misconduct. For the following reasons, we affirm the judgment of the District Court.

## I. Facts

Defendant left his job at National Health Labs ("NHL") and began working as office manager of the Michigan Conference of Teamsters Welfare Fund (the "Fund") in late June 1980. The Fund is an employee welfare benefit plan within the meaning of and subject to the provisions of Title I of ERISA. In August of 1980, while still employed by the Fund, defendant and his wife incorporated Billing Specialists, Inc. ("BSI") to perform the medical billing for a friend of defendant's, a Dr. Nowosielski. Defendant had met Dr. Nowosielski through defendant's employment at NHL.

The Fund referred its beneficiaries, teamster members, to health care providers. Defendant, without disclosing his conflict of interest through BSI's involvement with Dr. Nowosielski's practice, exerted his influence to have Dr. Nowosielski reclassified as a "Plan A" provider rather than a "Plan B" provider for Fund members, thereby significantly increasing Dr. Nowosielski's patient load. For all of Dr. Nowosielski's lab work which defendant steered to Metric Medical Laboratories ("Metric") defendant received a 20% commission.[1] This commission was paid either to defendant directly or to BSI. Although ownership of BSI was transferred to defendant's wife, defendant continued to benefit since the moneys were placed in a joint account or for the purchase of jointly-owned property. Also, although the moneys were paid to BSI, they were paid, according to Metric, because defendant was the originator of the business and to assure that Metric retained the business. BSI performed no service for Metric. Metric was run by defendant's former boss from NHL, Carl Marcus. Defendant did not disclose this scheme to the Fund. Since BSI had constituted an indirect financial interest in Dr. Nowosielski's practice, defendant, as a fiduciary of the Fund, owed a duty to disclose to the Fund the conflict of interest that his involvement with BSI created. Defendant failed to disclose his conflict of interest to the Fund's attorney for seven years. When, under pressure, defendant finally did disclose the existence of BSI, he misrepresented both his role in BSI and the amount of money that BSI brought him.

In 1983, defendant became Executive Director of the Fund and in 1986 negotiations and a bid process began for a so-called capitated lab program. At this time, defendant instructed the Fund officials in charge of the bidding process that he should not be involved in the bid process because of a conflict of interest. He did not disclose the 20% commission, however. Over time, however, defendant's position of detached non-participation dissolved until he ultimately ordered the Fund employee in charge of the bid process, whom defendant could fire at any time and ultimately did fire, to "make sure that Metric gets [the] bid."

In February of 1987, Metric was tentatively approved as the lab to receive the award of the capitated program but the Fund's attorney, Sheldon Fealk, was concerned that solicitation of the bids was improper and he recommended a re-bid. Defendant shared the other labs' initial bids with Marcus and other Metric employees after the first round of bids.

---

* The Honorable John W. Potter, United States District Judge for the Northern District of Ohio, sitting by designation.

1. Furthermore, the government presented persuasive evidence that Dr. Nowosielski's use of lab work was widely recognized as profligate, if not abusive.

It was just prior to the contemplated final award of the capitation contract to Metric that defendant revealed for the first time the existence of his billing company, BSI, to the Fund's attorney, Fealk. And it was at this time that defendant misrepresented his role in BSI and that company's income.

In October of 1987, the formal capitation contract with Metric still had not been executed and on October 19th, defendant fired the Fund officer in charge of the bidding process who responded by notifying the trustees of the Fund of what he alleged were defendant's improprieties concerning BSI, Dr. Nowosielski, and Metric Medical Labs. The Fund launched an investigation, hiring outside counsel, in response to which defendant and his wife refused to provide some information and also provided false information. The investigation's final report found no prohibited transactions for the purposes of ERISA and the trustees, relying on the report, took no further action.

In November 1993 an indictment was filed in federal district court charging defendant with one count of violating 18 U.S.C. § 1954 and two counts of violating 18 U.S.C. § 1027. Defendant was convicted on two counts of the three count indictment. The jury found defendant guilty of soliciting and receiving kickbacks from Metric in return for influencing the Fund to select Metric as a service provider in violation of 18 U.S.C. § 1954 and making a false statement in his December 16, 1988 letter to the Fund in violation of 18 U.S.C. § 1027.

## II. Hearsay and FED.R.EVID. 801(d)(2)(D)

■ The defendant argues that the District Court improperly admitted hearsay testimony, thereby prejudicing his case. The government contends that the testimony at issue did not constitute hearsay, or in the alternative, if deemed inadmissible hearsay, that the standard of review be for plain error because the objection made at trial is not the objection now argued. The outcome of such review, according to the government, would be a finding that admission of such testimony was harmless when set against the "plethora of evidence," and therefore the conviction should be affirmed. We find that the testi-

mony was in fact inadmissible hearsay, but that the testimony constituted harmless error.

The disputed testimony was that of prosecution witness Roger Towne, an employee of Delaware Professional Services ("DPS"). DPS was an organization hired by the Fund to search out providers of medical care and laboratory services who would save the Fund money on medical expenses. Over defense counsel's repeated hearsay objections, Towne was allowed to testify that his partner, Edward Brown, since deceased, had told Towne not to bother searching out more cost-effective providers of lab services for the Fund because defendant was making sure that Metric got the Fund's business.

■ The District Court admitted Towne's testimony over defense counsel's objection under the 801(d)(2)(D) exclusion from the general definition of hearsay. This subsection provides that a statement is not hearsay if it is offered against a party and is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." *Robert R. Jones Assoc., Inc. v. Nino Homes,* 858 F.2d 274, 276 (6th Cir.1988).

It is clear that Towne's testimony is offered against defendant, a party, but we disagree that declarant Brown was defendant's agent or servant. The Federal Rules of Evidence do not define the terms "agent" or "servant." The Supreme Court has concluded that the use of the terms without definition evidences Congress' intent to describe the traditional master/servant relationship as understood by common law agency doctrine. *Boren v. Sable,* 887 F.2d 1032, 1038 (10th Cir.1989)(citing *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 739–40, 109 S.Ct. 2166, 2172, 104 L.Ed.2d 811 (1989)). The crucial question therefore is whether Brown would have been considered an agent or servant of defendant at the time of the alleged statement.

Brown worked for DPS which was hired by the Fund. Assuming *arguendo* that this relationship made Brown an agent of the Fund, there remains the question of whether

Brown was defendant's agent. *Boren*, 887 F.2d at 1039 ("An 'agency relationship' is not created solely by the fact that the purported principal is a corporate officer."). Agency can be established in one of two ways.

First, Brown can be shown to have been an agent for the Fund and defendant's control over the Fund so extensive as to have the Fund's role as principal imputed to defendant. *See, United States v. Paxson*, 861 F.2d 730 (D.C.Cir.1988). In *Paxson*, statements made by the vice-president of a closely held corporation were admissible under the agency exception to the hearsay rule when the defendant was nominally a "co-employee," but owned the "overwhelming majority of the [corporation's] stock." Defendant Paxson argued that the declarant was a co-employee rather than defendant's agent but the appeals court found that, given the pair's respective relationships to the corporation, an agency relationship was present as between the defendant and the declarant.

Finding the requisite agency relationship by this method of analysis fails in this case, however. The nature of the relationship between defendant and the Fund stands in sharp contrast to the relationship between Paxson and Paxson Electronic. Defendant did not control the Fund for whom he worked as Paxson controlled Paxson Electric. *See Paxson*, 861 F.2d at 734. The Fund is controlled by union and management trustees. Even granting the government's contention that defendant's job title, at the time, of "Office Manager" concealed a greater role at the Fund than the title may imply, defendant by no means could have been regarded as having the breadth of control required for the purposes of determining the existence of an agency relationship by imputing the corporation's status as principal to the corporate employee. Charles Collins, who was executive director, a position later held by defendant, was defendant's superior. The prosecution failed to establish the defendant's requisite control over the Fund.

■ An agency relationship would also be proven if factors which normally make up an agency relationship are present between Brown and defendant, regardless of the corporate structure. In other words, defen-

dant's role in the Fund is neither conclusive of an agency relationship with Brown nor is his role as corporate employee preclusive of the possibility. "[T]he evidence [of agency] should not be excluded simply because the statement is offered against a corporate officer rather than a corporation." *United States v. Young*, 736 F.2d 565, 568 (10th Cir.1984), *rev'd. on other grounds*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

*Paxson*, which the government offers as precedent in this case, differs not only in the fact that the defendant had complete control over the corporation but also the declarant had worked under the defendant for 25 years and reported directly to him. The record discloses no evidence of such an agency relationship between defendant and Brown whether as a matter of duration or as a matter of authority. *See also Young*, 736 F.2d at 568 (employer/employee-type relationship between the defendant and declarant clearly established in the record). Therefore, since the factors that normally make up an agency relationship are absent as between defendant and Brown, we find that an agency relationship did not exist and that Towne's testimony therefore constituted inadmissible hearsay.

The government argues that *Robert R. Jones Assoc., Inc. v. Nino Homes*, 858 F.2d 274 (6th Cir.1988) is a case of "remarkable similarity" to the case at bar and dictates a different result. We disagree. In *Nino Homes*, we pointed out that both a corporate officer *and* the corporation itself were defendants. Furthermore, the defendant had hired the declarant. These factors were deemed sufficient to establish the agency relationship. In the case before us, in contrast, the Fund was not a party in the case and there was no showing in the record that defendant was in any position to hire or fire Brown when Brown's statement was made to Towne. Therefore, *Nino Homes* is distinguished. The government has failed to show the requisite agency relationship to admit Brown's statement under FED.R.EVID. 801(d)(2)(D).

Even if the testimony of Towne was inadmissible hearsay, the government argues, the admission of the evidence is reviewable only

for plain error. Government brief at 13 (citing *United States v. Cox*, 957 F.2d 264, 267 (6th Cir.1992); *United States v. Evans*, 883 F.2d 496, 499 (6th Cir.1989)). Although defendant objected at trial and made a motion to suppress pre-trial, the government argues that defendant did not state the proper basis for the objection.

Specifically, the government lays great emphasis on the fact that, in the colloquy following defendant's hearsay objection at trial, defense counsel's explanation for why he felt that Towne's testimony did not come within 801(d)(2)(D) was not the same argument that defense counsel makes on appeal. At trial, defense counsel stated, "Mr. Brown is not an agent or servant of this company; Mr. Brown is [Towne's] partner." Thereupon a discussion occurred as to whether one partner is an agent of another partner. Certainly this is not the argument defendant makes on appeal, that Brown was not defendant's agent.

 However, even if the objection was adequate, we will not reverse if the error was harmless. We look to the entire record to see if the error tended to prejudice the defendant. FED.R.CRIM.P. 52(a). The government emphasizes that the testimony amounted to "a minuscule" twelve lines. However, the prejudicial effect of hearsay testimony is not measured in line numbers. The words, "I confess," occupy little line space but their improper admission could surely prejudice a party.

Nonetheless, defendant's thorough and effective cross-examination of the witness went far to neutralize any prejudice that witness' testimony may have had. Counsel effectively showed that the witness had scant knowledge of the facts he alleged. Furthermore, the record provides overwhelming evidence that defendant Wiedyk violated 18 U.S.C. § 1954 in concealing his financial ties with Dr. Nowosielski and Metric from the Fund, in using his position at the Fund to steer business in their direction, and thereby profiting at the Fund's expense. "[O]n balance, we believe it can be said 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by

the error ....' " *United States v. Dean*, 969 F.2d 187, 197 (6th Cir.1992)(citing *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)).

## III. Prosecutorial Wrongdoing and Mistrial

Defendant's second ground for appeal concerns two concededly improper questions asked by the prosecution of prosecution witness Michael Lavoie, an attorney who conducted the in-house investigation of the Fund after the disgruntled former Fund employee made his allegations of defendant's wrongdoing. Prosecutor Convertino concluded his questioning of Lavoie and the government's case by asking first whether Lavoie was aware of the fact that Metric was convicted of the felony of receiving kickback payments and then whether he was aware that Marcus was convicted of paying kickbacks. Defendant did not object to the first question. After the second question was asked and before it was answered, defendant's counsel stated, "Judge, I'd like to reserve a motion." No reason was stated nor did counsel ask that the jury be excused. The court merely responded, "All right, let's move along." The government soon rested and defendant then made his motion for a mistrial. Neither Metric nor Marcus were witnesses in the case; therefore, the evidence was inadmissible to impeach their credibility. The adduced evidence was however potentially prejudicial by suggesting defendant's guilt by association with Metric and Marcus the parties who were paying the alleged kickbacks. After the motion was made, the trial judge recognized the impropriety of the questions, but denied the motion for mistrial and gave the jury a curative instruction to ignore the two problematic questions as irrelevant.

 We review the denial of a motion for mistrial for an abuse of discretion. *United States v. Chambers*, 944 F.2d 1253 (6th Cir.1991), *cert. denied*, 502 U.S. 1112, 112 S.Ct. 1217, 117 L.Ed.2d 455 (1992). *United States v. Carroll*, 26 F.3d 1380 (6th Cir.1994) represents our most recent attempt to articulate a single standard for determining when a prosecutor's improper comments constitute reversible error. 26 F.3d at 1384 (citing

*United States v. Leon,* 534 F.2d 667 (6th Cir.1976); *United States v. Bess,* 593 F.2d 749 (6th Cir.1979)). First, the court is to apply the so-called *Leon* factors to determine whether the impropriety was flagrant. Flagrant improprieties constitute reversible error. *Carroll,* 26 F.3d at 1385. Non-flagrant improprieties are subjected to the *Bess* test which requires a new trial if proof of guilt was not overwhelming, defendant objected to the improper remarks, and the court failed to cure the error with an admonishment to the jury. *Carroll,* 26 F.3d at 1390.

The *Leon* factors are as follows:

(1) The degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused;

(2) whether the comments were isolated or excessive;

(3) whether they were deliberately or accidentally placed before the jury;

(4) and finally, the strength of the competent proofs introduced to establish the guilt of the accused.

26 F.3d at 1384.

 With regard to the first factor, concerns about the tendency to mislead the jury and to prejudice the accused were disposed of by the District Court's curative instructions. "Juries are presumed to understand and follow such directions from the court," *United States v. Forrest,* 17 F.3d 916, 920–21 (6th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2115, 128 L.Ed.2d 673 (1994) and the District Court was emphatic in his instruction to "totally and completely disregard" the questions as "totally irrelevant." Thus any prejudice that the improper questions may have generated was mitigated by the instructions.[2]

Second, the comments were isolated rather than excessive. The third factor, whether the prosecution deliberately posed improper questions to the witness, is unclear. Defense counsel did not object to the prosecution's first question and only "reserved a motion" prior to the answer of the second question;

thus defense counsel himself did not appear on notice of the impropriety of the prosecution's first question. Furthermore, after the colloquy following defense counsel's motion for mistrial in which the District Court determined that the questions were improper, the prosecution did in fact refrain from returning to this line of questions. *Cf. United States v. Leon,* 534 F.2d 667, 680 (6th Cir.1976)(prosecution persists in making improper argument after a ruling sustaining an objection).

On the other hand, the government's suggestion in its brief that these questions were "in response" to defense counsel's impeachment of the credibility of a prosecution witness for prior conviction is meritless. The questions by defense counsel related to convictions of witnesses who testified and whose credibility was indirectly at issue. Marcus was not a witness in this case. In addition, the government argues that the felony prosecutions of Metric and Marcus were already part of the record as part of the investigative report which the Fund hired outside counsel to perform. But as defense counsel's reply brief points out, this investigative report, although frequently referred to, was not received into evidence.

Finally, the fourth factor considers the strength of the competent proofs introduced to establish the guilt of the accused. As mentioned above, the record contains ample evidence of defendant's guilt for the crimes charged. Therefore, of the four factors, only the third cuts in favor of the defense and then only weakly. Thus it is clear that the misconduct was not flagrant under the *Leon* test. *United States v. Carroll,* 26 F.3d 1380, 1383–90 (6th Cir.1994).

It follows that the *Bess* test applies, and that the appellant is entitled to a new trial only if proof of his guilt was not overwhelming, he objected to the improper remarks, and the court failed to cure the error with an admonishment to the jury. *Carroll,* 26 F.3d at 1389–90. Although defendant argues that he objected to the second improper question, the judge apparently did not understand that

---

**2.** We believe the curative instructions were sufficiently immediate, clear and forceful to have retained their curative effect in spite of the 70–minute delay between the improper questions

and the curative instructions, during which the jury was recessed, particularly in light of the fact that defense counsel acquiesced in the delay at the time.

counsel was making an objection and made no ruling. The statement that counsel wishes "to reserve a motion" does not serve an important purpose of an objection—to alert the District Court to counsel's specific problem with a question. Given counsel's tardy and non-specific objection, the overwhelming proof of defendant's guilt and the emphatic curative instructions, we find no abuse of discretion in the District Court's denial of the motion for mistrial.

## IV. Denial of Fair Trial

 As defense counsel's third and final ground for appeal, counsel argues that prosecutorial misconduct deprived his client of a fair trial. In particular, appellant argues that the references to the Metric and Marcus criminal convictions, reference to reputed mobster Allen Dorfman,[3] reference to the Fund as a "den of iniquity," and finally the exhortations to "send [defendant and the Fund] a message," denied defendant a fair trial. Appellant's Brief at 43. The question of whether prosecutorial misconduct has rendered a trial "fundamentally unfair" is a mixed question of law and fact and is reviewed *de novo. United States v. Clark,* 982 F.2d 965, 968 (6th Cir.1993).

The objection to the improper questions concerning Marcus and Metric were discussed above with regard to the denied motion for mistrial. The questions were improper but insufficient to merit reversal of the denial of the motion for mistrial. While the refusal to grant a mistrial was affirmed, these questions were concededly improper and therefore, when considered cumulatively with other improprieties, could nonetheless contribute to defendant's deprivation of a fair trial. Whether the defendant was denied a

fair trial, therefore, is contingent on the existence and severity of other improprieties.

 The next alleged impropriety to which defendant refers is the introduction of evidence concerning the death of reputed mobster Allen Dorfman. Defense counsel made a timely objection to testimony elicited concerning Dorfman on the grounds of relevance. JA at 53.[4] The standard of review for the admission of evidence where relevance is at issue is abuse of discretion. *United States v. Evans,* 27 F.3d 1219, 1232 (7th Cir.1994). An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made. *United States v. Carroll,* 26 F.3d 1380, 1383 (6th Cir.1994).

The testimony regarding the murder of Dorfman was admitted to support the credibility of a government witness. The witness, Charles Collins, a former employee of the Fund, had been convicted of perjury. His credibility thus potentially compromised, the prosecution sought to explain that the witness committed perjury due to a perceived threat from Allen Dorfman, a mobster. Appellee's brief at 22. The fact that Collins believed Dorfman to have been a mobster and to have been slain and therefore no longer a threat to Collins' safety, thus supports an inference that he at one time committed perjury for fear of retribution but was now free to tell the truth in light of Dorfman's death. Therefore, as the credibility of the witness was surely relevant, the evidence adduced to establish his credibility is relevant and we affirm the District Court's finding of relevance on this issue.[5]

 With regard to the statements in the prosecution's closing argument to which the defendant objects on appeal, we must determine whether the conduct was improper.

---

3. Throughout the trial transcripts, Allen Dorfman is referred to as "Allen Dorhman" but in light of the fact that both the Appellant and the Appellee refer to "Allen Dorfman," he is called the latter herein.

4. The Federal Rules of Evidence define relevant evidence as any "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED.R.EVID. 401.

5. Whether the testimony elicited from Collins regarding the manner of Dorfman's demise constituted inadmissible hearsay is a close question not raised by defense at trial. Thus the failure to exclude this testimony as inadmissible hearsay is reviewable only for plain error, FED.R.CRIM.P. 52(b). We have no trouble concluding that this error did not rise to the level of "so 'plain' [that] the trial judge and prosecutor were derelict in countenancing it." *United States v. Cox,* 957 F.2d 264, 267 (6th Cir.1992) (citations omitted).

Because there was no objection from the defendant at trial, we review only for plain error. *United States v. Young,* 470 U.S. 1, 16, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1 (1985); *United States v. Morrow,* 977 F.2d 222, 229 (6th Cir.1992)(en banc), *cert. denied,* — U.S. ——, 113 S.Ct. 2969, 125 L.Ed.2d 668 (1993). "[T]he complained-of conduct will not rise to *reversible* error, notably if it is not flagrant, where proof of guilt is overwhelming, where counsel does not object and/or where the trial judge steps in and admonishes the jury." *Morrow,* 977 F.2d at 229 (citation omitted). On the other hand, while we review each alleged instance of misconduct where defendant failed to object for plain error, the question of whether the actions collectively resulted in a fundamentally unfair trial is a mixed question of law and fact which we review *de novo. United States v. Clark,* 982 F.2d 965, 968 (6th Cir.1993). We find that none of the prosecutor's statements individually rose to the level of reversible error nor did the statements collectively deprive defendant of a fair trial.

■ A prosecutor's statement in a closing argument is improper if the statement brings to the jury's attention purported facts that are not in evidence and are prejudicial. *United States v. Leon,* 534 F.2d 667, 679 (6th Cir.1976). Concerning the statement that the Fund was a "den of iniquity," it was clear from the record that in fact a number of the participants and associates of the Fund had been convicted of illegal activities; the prosecution did not introduce facts not in the record and therefore, while the rhetoric may be somewhat excessive, the statement was not improper. The same is true with regard to the comments regarding some of defendant's actions when he was the Executive Director of the Fund.[6] While the mention of such actions may have been prejudicial to the defendant, these actions were part of the record of the case to which the prosecution was entitled to refer.

Finally, with regard to the "send a message" remarks in closing argument,[7] we agree with the government that the two remarks, either alone or in addition to other factors, did not rise to the level of denying the defendant a fair trial. In *United States v. Alloway,* 397 F.2d 105 (6th Cir.1968), we established that a prosecutor's urging the jury to deliver a guilty verdict to send the defendant a message was not reversible error. 397 F.2d at 113.[8] *See also United States v. Reliford,* 58 F.3d 247, 250–51 (6th Cir.1995).

Defendant relies upon *United States v. Solivan,* 937 F.2d 1146 (6th Cir.1991), where a "send a message" closing argument was deemed to be "a single misstep so destructive to defendant's right to a fair trial that it constitutes reversible error." 937 F.2d at 1150. That case, however and the case which it followed, *Viereck v. United States,* 318 U.S. 236, 63 S.Ct. 561, 87 L.Ed. 734 (1943) are distinguishable from the present case. In *Solivan* and *Viereck,* the prosecution inflamed the passions of the jury regarding issues of national concern, the so-called "War on Drugs" and World War II.

> The fairness or unfairness of comments appealing to the national or local community interests of jurors in a given instance will depend in great part on the nature of the community interest appealed to, and its relationship to, and the nature of, the wider social-political context to which it refers. The correlation between the community interest comments and the wider social political context to a large extent controls the determination of whether an appeal is deemed impermissible because it is calculated to inflame passion and prejudice.

*Solivan,* 937 F.2d at 1152.

Since defendant did not argue, nor from these facts could he have successfully argued,

---

6. In closing argument, the prosecution made reference to defendant's alleged summary dismissal of employees and to his alleged physical attack of Fund attorney, Fealk. Both of these allegations were part of the record.

7. The prosecutor, in closing argument, exhorted the jury, "Send [Wiedyk] a message ... Send that Fund a message." Appellant's brief at 43.

8. It is true that in *Alloway,* in contrast to the case at bar, the jury was given a curative instruction. The curative instruction, however, was in response to a timely objection which was absent from the present case. 397 F.2d at 113.

that there was a situation in this case analogous to the "War on Drugs" or World War II, his dependance on *Solivan* is misplaced. In this case, there was no appeal to the community interest in ending a societal evil and thus, the danger that such an appeal would arouse the jury's passion and prejudice, if it existed at all, did not exist to the same degree in this case.

Thus, our review of the claim of unfair trial results in a finding of only the impropriety previously discussed under the previous objection for failure to grant a mistrial. Our review of that question dictates the result of this inquiry. As the trial judge's refusal to grant a mistrial on the basis of these two improper questions was not an abuse of discretion, implicitly it did not deprive the defendant of a fair trial.

### V. Conclusion

For the reasons stated, we AFFIRM defendant's convictions.