# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 12, 2015          Decided July 28, 2015

No. 13-3107

UNITED STATES OF AMERICA,
APPELLEE

v.

JAVIER EDUARDO JUAN BALLESTAS, ALSO KNOWN AS EL
MONO,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cr-00050-6)

*Marie L. Park*, appointed by the court, argued the cause and filed the briefs for appellant.

*Scott A.C. Meisler*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief was *Meredith Mills*, Trial Counsel. *John A. Romano*, Trial Attorney, and *Elizabeth Trosman*, Assistant U.S. Attorney, entered appearances.

Before: GARLAND, *Chief Judge*, and SRINIVASAN and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

SRINIVASAN, *Circuit Judge*: Javier Eduardo Juan Ballestas, a Colombian citizen, was indicted under the Maritime Drug Law Enforcement Act (MDLEA) and extradited to the United States for prosecution. Ballestas pleaded guilty to a charge of conspiracy to distribute drugs "on board . . . a vessel subject to the jurisdiction of the United States," in violation of the MDLEA. 46 U.S.C. §§ 70503(a), 70506(b). He reserved the right to bring an appeal on certain issues, including whether the MDLEA's conspiracy provision reaches extraterritorially to encompass his charged conduct in Colombia, and whether the application of the MDLEA against him violates the Due Process Clause of the Fifth Amendment because of the absence of an adequate nexus between his conduct and the United States. Because we are unpersuaded by Ballestas's arguments on those and other issues, we affirm.

I.

A long-term investigation conducted by United States and Colombian officials uncovered an international drug-trafficking operation based in Colombia. The organization used stateless vessels to transport large quantities of cocaine from Colombia through international waters, ultimately destined for the United States. Email and phone surveillance revealed that Ballestas supported the organization's drug smuggling activities. He provided maps and law enforcement reports purporting to reveal the location of United States, Colombian, and other nations' air and maritime forces in the vicinity of the Caribbean Sea at specific times. Vessels engaged in trafficking runs used those reports to evade detection and capture.

Between May 2008 and September 2010, law enforcement agents seized or attempted to seize eight of the organization's cocaine shipments. Intercepted

communications linked Ballestas to at least four of the seized shipments, which together accounted for thousands of kilograms of seized cocaine.

The government sought indictment of Ballestas and six co-conspirators for violating the MDLEA, 46 U.S.C. §§ 70501 *et seq.* The MDLEA provides that an "individual may not knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance on board . . . a vessel subject to the jurisdiction of the United States," *id.* § 70503(a), or attempt or conspire to do the same, *id.* § 70506(b). The statute defines a "vessel subject to the jurisdiction of the United States" to include "vessel[s] without nationality." *Id.* § 70502(c)(1)(A). *See generally United States v. Miranda*, 780 F.3d 1185 (D.C. Cir. 2015).

In February, 2011, a federal grand jury returned an indictment charging Ballestas with conspiring to distribute drugs "on board . . . a vessel subject to the jurisdiction of the United States" in violation of the MDLEA. *See* 46 U.S.C. §§ 70503(a), 70506(b). Ballestas was arrested in Colombia and extradited to the United States to stand trial.

In September, 2012, Ballestas filed a motion to dismiss the indictment. He contended that the MDLEA's conspiracy provision did not extend extraterritorially to reach individuals (like Ballestas) who never came "on board" the relevant vessels. *Id.* § 70503(a). Ballestas also argued that applying the MDLEA against him violated the Due Process Clause because of the absence of a nexus between his conduct and the United States.

In response to Ballestas's motion, the government proffered facts supporting the conspiracy charge. Two boats

in particular, the government submitted, supported Ballestas's prosecution under the MDLEA for conspiring to distribute drugs on board a vessel without nationality. First, a boat intercepted in international waters near Panama on March 3, 2010, displayed no visible flag and held no valid registration. Second, another boat, seized in Panamanian waters on March 11, 2010, similarly had no flag or registration. Officials observed the vessel in international waters, pursued the vessel into Panamanian waters, and then seized it. According to the government's proffer, Ballestas provided assistance with the cocaine shipments aboard both of those vessels.

Several months after responding to the motion to dismiss, the government informed Ballestas that the crew members apprehended during the March 3rd seizure had been charged and convicted under the MDLEA in the Middle District of Florida. The government provided Ballestas with the docket number and name of that case.

In February 2013, the district court denied Ballestas's motion to dismiss the indictment. The court concluded that the conspiracy provision of the MDLEA applied extraterritorially to Ballestas's actions in Colombia. Physical presence "on board" a vessel, the district court held, is not an essential element of a conspiracy offense under the MDLEA. The court further held that the vessels apprehended on March 3rd and 11th qualified as stateless vessels "subject to the jurisdiction of the United States." 46 U.S.C. § 70502(c)(1). In addition, the court rejected Ballestas's due process challenge, finding that there is no requirement to show a nexus to the United States when the alleged crimes involve stateless vessels.

Ballestas sought reconsideration of the district court's denial of his motion to dismiss. He argued that certain

intervening decisions undermined the court's extraterritoriality and due process holdings. The district court denied the motion for reconsideration, and, shortly thereafter, Ballestas pleaded guilty to a superseding information. In connection with Ballestas's sentence, the superseding information omitted certain drug quantity specifications that had appeared in the indictment in order to avoid triggering a ten-year mandatory minimum term of imprisonment.

Ballestas's plea agreement reserved his right to appeal "the specific and limited issue" of the denial of his motion to dismiss and motion for reconsideration. App. 192. The agreement also preserved his right to appeal his sentence on the grounds that it "exceeds the maximum permitted by statute or results from an upward departure from the guideline range established by the Court at sentencing." *Id.* at 193. In connection with his plea agreement, Ballestas and the government entered a joint statement of stipulated facts. Those facts established Ballestas's awareness of and involvement with the vessel interdicted on March 3rd and also established that the vessel was "without nationality" and therefore subject to the jurisdiction of the United States. *Id.* at 181-82. The district court accepted Ballestas's plea after conducting a colloquy in accordance with Federal Rule of Criminal Procedure 11.

In November 2013, the district court calculated Ballestas's sentencing guidelines range to be seventy to eighty-seven months based on the quantity of drugs stipulated to have been recovered from the March 3rd vessel. The court sentenced Ballestas to a below-guidelines sentence of sixty-four months of imprisonment followed by three years of supervised release. Ballestas now appeals, challenging the denial of his motion to dismiss, the denial of his motion for reconsideration, and his sentence.

6

II.

A.

Ballestas first contends that the MDLEA's conspiracy provision does not apply extraterritorially to reach his conduct in Colombia.  We disagree.

The MDLEA's conspiracy provision, 46 U.S.C. § 70506(b), provides that a "person attempting or conspiring to violate section 70503 of this title is subject to the same penalties as provided for violating section 70503."  The underlying substantive offense set forth in § 70503 prohibits "knowingly or intentionally manufactur[ing] or distribut[ing], or possess[ing] with intent to distribute, a controlled substance on board," *inter alia*, "a vessel subject to the jurisdiction of the United States," *id.* § 70503(a), which includes "a vessel without nationality," *id.* § 70502(c)(1)(A).

In arguing that the MDLEA's conspiracy provision fails to reach extraterritorially, Ballestas relies on two canons of statutory interpretation.  First, he invokes the presumption against extraterritoriality, which dictates that, "[w]hen a statute gives no clear indication of an extraterritorial application, it has none." *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010).  Second, he relies on the so-called *Charming Betsy* canon, which takes its name from a decision in which the Supreme Court explained that "an act of Congress ought never to be construed to violate the law of nations if any other possible construction remains." *Murray v. Schooner Charming Betsy*, 6 U.S. (2 Cranch) 64, 118 (1804).

Each of those "principle[s]," however, "represents a canon of construction, or a presumption about a statute's

meaning, rather than a limit upon Congress's power to legislate." *Morrison*, 561 U.S. at 255. Thus, notwithstanding the presumption against extraterritoriality, a statute will be construed to apply extraterritorially if Congress gives a "clear indication" of that intention. *Id.* With regard to the *Charming Betsy* canon, similarly, if "a statute makes plain Congress's intent," a court "must enforce the intent of Congress irrespective of whether the statute conforms to customary international law." *United States v. Yousef*, 327 F.3d 56, 93 (2d Cir. 2003). After all, "Congress is not bound by international law," so "it may legislate with respect to conduct outside the United States, in excess of the limits posed by international law." *Id.* at 86.

Here, the extraterritorial reach of the MDLEA's substantive prohibitions is clear. Section 70503(b), entitled "extension beyond territorial jurisdiction," provides that § 70503(a), which sets forth the substantive prohibitions, "applies even though the act is committed outside the territorial jurisdiction of the United States." 46 U.S.C. § 70503(b). That straightforward expression of extraterritorial application settles the extraterritorial reach of § 70503(a).

Ballestas, however, attempts to draw a line between the extraterritorial reach of the MDLEA's substantive offense in § 70503(a) and the reach of the MDLEA's conspiracy offense in § 70506(b). He relies on the understanding that, "[w]hen a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms." *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1667 (2013) (quoting *Morrison*, 561 U.S. at 265). In Ballestas's view, the MDLEA's extraterritorial application therefore should be confined to the substantive prohibitions set forth in § 70503(a), and should not extend to

conspiracy (or attempt) to commit those substantive crimes under § 70506.  We are unpersuaded.

Under the presumption against extraterritoriality, the extraterritorial reach of a particular provision will not necessarily be imputed to an entire statute.  But in the particular context of "an ancillary offense like aiding and abetting or conspiracy,"  we have held that, "[g]enerally, the extraterritorial reach of [the] ancillary offense . . . is coterminous with that of the underlying criminal statute." *United States v. Ali*, 718 F.3d 929, 939 (D.C. Cir. 2013).  As a result, "when the underlying criminal statute's extraterritorial reach is unquestionable, the presumption [against extraterritoriality] is rebutted with equal force" for ancillary offenses in the same statute. *Id.*; *see United States v. Hill*, 279 F.3d 731, 739 (9th Cir. 2002).  Here, because the substantive offense established in § 70503(a) applies extraterritorially, we conclude that conspiracy to commit that substantive offense under § 70506 also has extraterritorial reach.  And with the extraterritorial reach of the conspiracy provision clearly established, we have no occasion to apply the *Charming Betsy* canon.

Our decision in *United States v. Ali* is highly instructive. Ali faced two sets of conspiracy charges.  First, he was charged under the blanket conspiracy statute, 18 U.S.C. § 371, with conspiracy to commit piracy.  The generic conspiracy provision, we observed, lacks affirmative indication of an intention to reach extraterritorially.  Because the provision is "ambiguous as to [its] application abroad," we applied the *Charming Betsy* canon to determine whether extraterritorial application would be consistent with the law of nations. *Ali*, 718 F.3d at 935; *see Kiobel*, 133 S. Ct. at 1664-65.  Ali was also charged with conspiracy to commit hostage taking under the Hostage Taking Act, 18 U.S.C. § 1203.   Like the

MDLEA, the Hostage Taking Act specifically provides for its extraterritorial application, and it also criminalizes conspiracy in the same statute. *Id.* § 1203(a). Because the Hostage Taking Act made clear its extraterritorial reach, and because that understanding applied to the Act's conspiracy prohibition, we declined to apply the *Charming Betsy* canon. *Ali*, 718 F.3d at 943.

We follow the same course here with respect to the MDLEA. To be sure, the Hostage Taking Act's prohibition against conspiracy appears in the same statutory subsection as the underlying substantive offense, 18 U.S.C. § 1203(a), whereas the MDLEA codifies its conspiracy prohibition in a separate statutory section, 46 U.S.C. § 70506(b). But we view that to be a distinction without a difference.

Our conclusion that the MDLEA's conspiracy provision applies extraterritorially is consistent with Congress's purpose in enacting it. As the Senate Report for the MDLEA explains, Congress sought to address concerns about difficulties encountered in prosecuting persons involved with shipments of drugs to the United States on vessels, both with respect to the crew on board and others associated with the enterprise. Before the MDLEA's enactment, when the Coast Guard seized illegal drug shipments, the government could not "prosecute the crew *or others involved in the smuggling operation*" in the absence of often elusive evidence that the drugs were destined for the United States. S. Rep. No. 96-855, at 2 (1980), *reprinted in* U.S.C.C.A.N. 2785, 2786 (July 16, 1980) (emphasis added). In light of the obstacles to successful prosecution in the United States, the Coast Guard's drug interdiction efforts had "little deterrent effect on the crews *or the trafficking organizations*." *Id.* (emphasis added).

Recognizing that "trafficking in controlled substances aboard vessels is a serious international problem, is universally condemned, and presents a specific threat to the security and societal well-being of the United States," 46 U.S.C. § 70501, Congress enacted the MDLEA to enhance the government's ability to prosecute members of drug trafficking organizations. Giving the MDLEA's conspiracy provision the construction suggested by Ballestas would effectively inoculate many members of such organizations—including organizations targeting the United States—against prosecution. Drug kingpins and other conspirators who facilitate and assist in carrying out trafficking schemes would fall beyond the reach of the statute, compromising the overriding intent of Congress in enacting it. Those considerations reinforce our conclusion that the MDLEA's conspiracy provision reaches Ballestas's extraterritorial conduct in this case.

B.

Ballestas next argues that, even if the MDLEA's conspiracy provision applies extraterritorially, his particular conduct is still beyond the statute's reach. The MDLEA's substantive provision criminalizes the manufacture, distribution, or possession of a controlled substance "on board" a covered vessel. 46 U.S.C. § 70503(a). That language, Ballestas claims, imposes an express limitation on the scope of the MDLEA's extraterritorial application. The qualifying phrase "on board," according to Ballestas, means that the MDLEA should apply extraterritorially only when a person's charged conduct took place on board a covered vessel.

At the outset, we note that, under the interpretation Ballestas urges us to adopt, the conspiracy and attempt

prohibition contained in § 70506(b) would seemingly do little practical work. Under his interpretation, § 70506(b) would reach individuals conspiring or attempting to violate § 70503 only if their conduct took place while physically "on board vessels" covered by the statute. But it is unclear whether someone could conspire or attempt to violate § 70503(a) while "on board a vessel" without simultaneously violating the substantive prohibition itself. If a person on a covered vessel knows that drugs destined for distribution are on the vessel and has played a role in the trafficking enterprise (as would be the case in a conspiracy or attempt prosecution), that person might well also have committed the underlying substantive offense by "possess[ing]" (at least constructively), with intent to distribute, "a controlled substance on board" the vessel. 46 U.S.C. § 70503(a).

In any event, we need not definitively decide in this case whether, or to what extent, the phrase "on board a vessel" might limit the extraterritorial application of the MDLEA. Regardless, Ballestas's conduct would still fall within the statute's exterritorial reach. It is a well-established principle of conspiracy law that "the overt act of one partner in a crime is attributable to all." *Pinkerton v. United States*, 328 U.S. 640, 647 (1946). And "[a]s long as a substantive offense was done in furtherance of the conspiracy, and was reasonably foreseeable as a 'necessary or natural consequence of the unlawful agreement,' then a conspirator will be held vicariously liable for the offense committed by his or her co-conspirators." *United States v. Washington*, 106 F.3d 983, 1012 (D.C. Cir. 1997). Those settled principles apply to Ballestas.

The stipulated facts establish, first, that criminal conduct took place "on board" vessels covered by the MDLEA, and second, that the criminal conduct is attributable to Ballestas as

a co-conspirator. Ballestas stipulated to his involvement in a drug trafficking organization that regularly transported drugs on board vessels traveling over the high seas. App. 179-80. In particular, Ballestas stipulated to his awareness that the organization transported approximately 1500 kilograms of cocaine on board a vessel apprehended by the United States Coast Guard on or about March 3, 2010. *Id.* at 181. The overt acts of other conspirators on board the March 3rd vessel are therefore attributable to Ballestas, satisfying any "on board a vessel" requirement that might arguably circumscribe the MDLEA's extraterritorial application.

## III.

Ballestas next challenges Congress's authority to criminalize his actions under the Define and Punish Clause, U.S. Const. art. I, § 8, cl. 10. That clause grants Congress the authority "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offenses against the Law of Nations." The clause encompasses three distinct powers: (i) to define and punish piracy; (ii) to define and punish felonies committed on the high seas; and (iii) to define and punish offenses against the Law of Nations. *See United States v. Smith*, 18 U.S. (5 Wheat.) 153, 158-59 (1820). In defending Congress's constitutional authority to apply the MDLEA in the circumstances of this case, the government relies solely on Congress's power under the Felonies Clause, *i.e.*, its power to define and punish felonies committed on the high seas. We agree that the Felonies Clause grants Congress authority to criminalize Ballestas's conduct.

Ballestas's argument relies in substantial part on the Eleventh Circuit's decision in *United States v. Bellaizac-Hurtado*, 700 F.3d 1245 (11th Cir. 2012). In that case, Panamanian officials apprehended the defendants on board a

stateless vessel in Panamanian waters. Panama consented to the prosecution of the defendants in the United States, but the Eleventh Circuit found that the application of the MDLEA to the defendants' conduct lay beyond Congress's constitutional authority. Critically, however, the government in *Bellaizac-Hurtado* relied solely on the Law of Nations Clause to support the constitutionality of the MDLEA's application. Responding to the government's argument, the Eleventh Circuit held that "drug trafficking is not a violation of customary international law and, as a result, falls outside the power of Congress under the [Law of Nations] Clause." *Id*. at 1249. *Bellaizac-Hurtado* did not address whether any alternative source of congressional authority—such as the Felonies Clause—could serve to criminalize the defendants' conduct. *Id.* at 1258. In fact, the court observed that "all of the [other] appeals in which we have considered the constitutionality of [drug trafficking] laws involved conduct on the high seas," and those convictions were upheld "as an exercise of [Congress's] power under the Felonies Clause." *Id.* at 1257. Because the government in this case defends Congress's authority under the Felonies Clause, not the Law of Nations Clause, *Bellaizac-Hurtado* is of little assistance to Ballestas.

In assessing whether the Felonies Clause grants Congress the power to criminalize Ballestas's behavior, we again rely on the established principles of conspiracy law set forth above. As discussed, "the overt act of one partner in a crime is attributable to all," *Pinkerton*, 328 U.S. at 647, as long as the act "was done in furtherance of the conspiracy, and was reasonably foreseeable as a 'necessary or natural consequence of the unlawful agreement,'" *Washington*, 106 F.3d at 1011 (quoting *Pinkerton*, 328 U.S. at 647-48). Here, the stipulated facts establish that Ballestas's co-conspirators committed felonious acts on the high seas, and also that those acts are

directly attributable to him. Ballestas acknowledged that one of the drug trafficking organization's vessels was apprehended on March 3, 2010, carrying approximately 1500 kilograms of cocaine. App. 181. He further acknowledged that the vessel had "traveled through the high seas." *Id.* As an admitted co-conspirator of the crew members, the acts of the crew—committed on the high seas—are attributable to Ballestas. The Felonies Clause therefore provides Congress with authority to "punish" Ballestas for his role in that conspiracy.

IV.

We next consider Ballestas's argument that the application of the MDLEA in his case violated the Due Process Clause because the government failed to demonstrate a nexus between his actions abroad and the United States. Our circuit has yet to decide "whether the Constitution limits the extraterritorial exercise of federal criminal jurisdiction." *Ali*, 718 F.3d at 943-44. Several other courts of appeals, though, have found that the Due Process Clause imposes limits on the extraterritorial application of federal criminal laws. *See, e.g.*, *United States v. Brehm*, 691 F.3d 547, 552-54 (4th Cir. 2012); *United States v. Ibarguen-Mosquera*, 634 F.3d 1370, 1378-79 (11th Cir. 2011). Those courts generally require a showing of "sufficient nexus between the defendant and the United States, so that . . . application [of the law] would not be arbitrary or fundamentally unfair." *United States v. Davis*, 905 F.2d 245, 248-49 (9th Cir. 1990) (citation omitted).

Just as in *Ali*, we need not definitively resolve whether the Due Process Clause constrains the extraterritorial application of federal criminal laws. Even assuming the existence of a due process limitation, the extraterritorial

application of the MDLEA in this case would not run afoul of it. As we observed in *Ali*, nexus with the United States merely serves as a "proxy for due process" requirements. *Ali*, 718 F.3d at 944. "The 'ultimate question'" under the Due Process Clause is not nexus, but is "whether 'application of the statute to the defendant [would] be arbitrary or fundamentally unfair.'" *Id.* (quoting *United States v. Juda*, 46 F.3d 961, 967 (9th Cir. 1995)). There is no arbitrariness or fundamental unfairness in the circumstances of this case.

Again, Ballestas's factual stipulations establish that he was part of an international drug smuggling organization that used stateless vessels to transport drugs across the high seas, bound ultimately for the United States. The conduct to which Ballestas pleaded guilty involved obtaining and selling reports and maps "indicat[ing] where *U.S.*, Colombian and other countries' . . . maritime assets were operating in the Caribbean Sea on a particular day." App. 180 (emphasis added). He stipulated to his knowledge that his co-conspirators used the maps to "plan the best route to be taken by the cocaine-laden vessels so as to avoid detection by maritime and law enforcement authorities," including, specifically, United States authorities. *Id.* Those admissions establish that application of a United States drug trafficking law (the MDLEA) to Ballestas was neither arbitrary nor fundamentally unfair.

V.

Ballestas claims that the district court erred in accepting the government's allegations as true when the court denied his motion to dismiss the indictment. In denying the motion, the district court relied on the "the Government['s] proffer[] that the vessel seized on March 3rd, 2010, was a vessel without nationality" (and thus a vessel subject to the jurisdiction of

the United States).  App. 76.  In Ballestas's view, the court could not deny his motion without requiring the introduction of evidence on whether the vessel in fact was subject to the jurisdiction of the United States and presenting that issue to the jury for proof beyond a reasonable doubt.

Ballestas's argument fundamentally misperceives the nature of a motion to dismiss an indictment.  Because a court's "use[] [of] its supervisory power to dismiss an indictment . . . directly encroaches upon the fundamental role of the grand jury," dismissal is granted only in unusual circumstances. *Whitehouse v. U.S. Dist. Court*, 53 F.3d 1349, 1360 (1st Cir. 1995) (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988)).  An "indictment's main purpose is 'to inform the defendant of the nature of the accusation against him.'" *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001) (quoting *Russell v. United States*, 396 U.S. 749, 767 (1962)).  It therefore need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). When considering a motion to dismiss an indictment, a court assumes the truth of those factual allegations.  *See Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952). Consequently, the district court did not err when it assumed the truth of the government's proffered facts in denying Ballestas's motion, including with regard to whether the pertinent vessel was subject to the jurisdiction of the United States.

VI.

Ballestas next argues that the government violated its constitutional obligation to disclose exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963).  According to Ballestas, the government waited too long to notify him of a

related trial that took place in the Middle District of Florida in 2010. That trial involved the prosecution of the crew members apprehended during the seizure of the vessel on March 3, 2010. Instead of disclosing the existence of the Florida prosecution at Ballestas's first appearance before the district court in February 2012, it appears that the government waited until December to notify Ballestas of the Florida proceeding. That delay, Ballestas contends, prevented him from gaining access to several documents that he thinks would have strengthened his case. The government argues that we should not reach the merits of Ballestas's *Brady* claim because he waived any *Brady* argument when he entered a guilty plea. *See United States v. Ruiz*, 536 U.S. 622, 628 (2002). We need not resolve the government's waiver argument, however, because we conclude that no constitutional violation took place in any event.

To succeed on the merits of his *Brady* claim, Ballestas must show that (i) the government suppressed evidence; and (ii) the evidence was favorable and material. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Ballestas's claim fails at the first step. When a defendant challenges the government's alleged delay in disclosure of exculpatory evidence, "the defendant must show a reasonable probability that an earlier disclosure would have changed the trial's result." *United States v. Dean*, 55 F.3d 640, 663 (D.C. Cir. 1995). If a "defendant receives exculpatory evidence 'in time to make effective use of it,' a new trial is, in most cases, not warranted." *Id.* (quoting *United States v. Paxson*, 861 F.2d 730, 737 (D.C. Cir. 1988)).

Here, the government alerted Ballestas to the existence of the Florida prosecution by December 2012. Additionally, the government around that time disclosed to Ballestas law enforcement materials containing information about the

March 2010 vessel seizures. Those materials included the precise Coast Guard declaration Ballestas now claims is *Brady* material. Although the disclosures came after Ballestas had submitted briefing on his motion to dismiss, they occurred three months before the district court ruled on the motion and nine months before Ballestas entered his guilty plea. Ballestas therefore had ample time to "make effective use" of any information from the Florida trial in support of his motion to dismiss and in deciding whether to enter a plea of guilty. Consequently, Ballestas has not shown a "reasonable probability" that earlier disclosure of the Coast Guard declaration would have made any difference. *Id.*

Ballestas separately suggests that the government should have pointed Ballestas to a habeas petition filed by one of the Florida defendants—Victor M. Ballestero Linares. That petition included an affidavit by Linares, which Ballestas maintains would have been helpful to his case. But Linares's affidavit was listed under the criminal docket number disclosed to Ballestas by the government in December 2012. Because Ballestas had access to that affidavit "in time to make effective use of it," he cannot show that the government suppressed the document. *Paxson*, 861 F.2d at 737.

## VII.

Finally, Ballestas challenges the sentence imposed by the district court. He claims that the MDLEA does not give the district court authority to consider conduct beyond the activity that took place on board the vessel seized on March 3, 2010— the only vessel specifically identified in the factual stipulations as having traveled through the high seas. Appellant Br. 42-43. As an initial matter, the nature of Ballestas's argument is unclear. His guilty plea laid out the guideline calculations supported by the stipulated facts and

concluded that "the Defendant's Total Offense Level would be 27/Criminal History Category I or a Guidelines range of 70 to 87 months." App. 188. That guidelines range was based solely on the drug amount recovered from the vessel seized on March 3rd. *See id.* at 186-88. While the district court considered other conduct in ultimately selecting a sentence within (or, actually, below) that range, courts enjoy substantial discretion to consider a wide range of factors when imposing a sentence following calculation of the guidelines range. *See* 18 U.S.C. § 3553.

In any event, Ballestas's guilty plea waived his right to appeal his sentence except insofar as "the sentence exceeds the maximum permitted by statute or results from an upward departure from the guideline range established by the Court at sentencing." App. 192. Ballestas cannot succeed in challenging his sentence on either of the two grounds he preserved. His guilty plea laid out the guidelines calculations supported by the stipulated facts, arriving at a guidelines range of seventy to eighty-seven months of imprisonment based on the amount of drugs recovered from the March 3rd vessel. *Id.* at 188. The district court ultimately sentenced him to a below-guidelines sentence of sixty-four months. Ballestas therefore has no basis for appealing his sentence on the ground that it "results from an upward departure from the guideline range established by the [district court]." *Id.* at 192. Additionally, because the MDLEA allows for a maximum sentence of twenty years of imprisonment for the charged conduct, *see* 46 U.S.C. § 70506(a); 21 U.S.C. § 960(b)(3), Ballestas likewise has no basis for challenging his sixty-four month sentence on the ground that it "exceeds the maximum permitted by statute." App. 192.

20

\* \* \* \* \*

For the foregoing reasons, we reject Ballestas's challenges and affirm the judgment of the district court.

*So ordered.*