**IN THE**

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2022

ARGUED: FEBRUARY 23, 2023
DECIDED: JULY 10, 2023

No. 21-1083, 21-1409, 21-2082

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

STEVEN ANTONIUS, AKA SEALED DEFENDANT 1, SHERVINGTON LOVELL, AKA
SEALED DEFENDANT 1, ARGEMIRO ZAPATA-CASTRO, AKA SEALED DEFENDANT
1,

*Defendants–Appellants,*

*v.*

GODOFREDO LEANDRO GONZALEZ, LUIS RAFAEL FEBRES MONASTERIO, MURVIN
REIGOUD MAIKEL, OMAR TORRES, MOSES ROOPWAH, NEREDIO-JULIAN SUCRE,
DAVID CARDONA-CARDONA, AKA SEALED DEFENDANT 1, JEAN-CLAUDE
OKONGO LANDJI, JIBRIL ADAMU, YOUSSOUF FOFANA,

*Defendants.*

————

Appeal from the United States District Court
for the Southern District of New York.

1:18-cr-00601-PGG–Gardephe, *District Judge*.

————

Before: CALABRESI, LYNCH, and ROBINSON, *Circuit Judges*.

————

Defendants–Appellants Steven Antonius, Shervington Lovell, and Argemiro Zapata-Castro ("Appellants") appeal from a judgment of the United States District Court for the Southern District of New York (Gardephe, *J.*). Appellants were prosecuted under the Maritime Drug Law Enforcement Act ("MDLEA") for conspiring to traffic drugs on the high seas using a stateless vessel. Before ultimately pleading guilty to the offense, they submitted a joint motion to dismiss their indictments on the ground that conspirators operating from a foreign country who were never physically on the high seas and who had no ties to the United States could not constitutionally be subject to prosecution under the MDLEA. The district court denied Appellants' motion to dismiss. On appeal, Appellants argue that their prosecution under the MDLEA violated due process because their conduct lacked a nexus with the United States and that, by applying the MDLEA to their conduct, Congress exceeded its Article I powers. We disagree with these arguments. We therefore AFFIRM the district court's denial of Appellants' motion to dismiss.

————————————————

JILL R. SHELLOW, Law Offices of Jill R. Shellow, White Plains, NY, *for Defendant–Appellant Steven Antonius.*

RUTH M. LIEBESMAN, Ruth M. Liebesman, Attorney-at-Law, Fair Lawn, NJ, *for Defendant–Appellant Shervington Lovell.*

PETER J. TOMAO, Law Office of Peter J. Tomao, Garden City, NY, *for Defendant–Appellant Argemiro Zapata-Castro.*

ELINOR L. TARLOW, Assistant United States Attorney (Matthew J.C. Hellman, Stephen J. Ritchin, Assistant United States Attorneys, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

_____

CALABRESI, *Circuit Judge*:

Defendants–Appellants Steven Antonius, Shervington Lovell, and Argemiro Zapata-Castro ("Appellants") appeal their respective convictions, which were entered after each pled guilty to conspiring to violate the Maritime Drug Law Enforcement Act ("MDLEA"). Appellants, along with other co-conspirators and undercover informants of the United States Drug Enforcement Administration ("DEA"), planned for the shipment of cocaine from Guyana to the Netherlands. The plan included a series of steps. First, two boats, each carrying approximately 600 kilograms of cocaine, were to meet off the coast of Barbados. There, the second boat would transfer its contraband to the first. Next, the first boat, now carrying 1,200 kilograms of cocaine, would set sail for Europe, where it

would meet a third boat at a location between the coast of Ireland and the Azores Islands. The cocaine on the first boat would then be transferred to the third boat. The third boat, disguised as a fishing vessel with a crew wearing fisherman's uniforms, would deliver the cocaine to the Netherlands—its final destination. At no point did Appellants plan for the drugs to be delivered to the United States or to travel in United States waters.

Each of the Appellants played a leadership role in the drug-trafficking conspiracy. They attended planning meetings in the Spring and Summer of 2018, which took place in Guyana and Jamaica. During these meetings Appellants, their co-conspirators, and the undercover DEA informants discussed the logistics, route, and cost of the cocaine shipment, as well as the supplies, financing, and amount of cocaine they would each contribute to the endeavor. Appellants also communicated by radio, using code names for their operation.

Zapata-Castro agreed to procure the first boat—the one which was to make the transoceanic journey. Zapata-Castro also agreed to provide the crew and three months' worth of rations. Antonius and Lovell agreed to supply the cocaine and to contribute to transportation expenses. Antonius contributed €135,000 and Lovell contributed $100,000-worth of Guyanese currency to the endeavor.

Antonius and Zapata-Castro were to decide the coordinates of the location where the first and second boats would meet off the coast of Barbados. They both also rallied their co-conspirators to consolidate their collective cocaine shipments into a single voyage, as initial discussions had contemplated multiple trips. Using his connections in the Netherlands, Antonius additionally arranged for the third boat and its crew to be disguised as a fishing operation and to meet the first at a point between the coast of Ireland and the Azores Islands.

Despite Appellants' grand plans, the cocaine did not make it very far. On July 27, 2018, the United States Coast Guard intercepted the first boat—the one procured by Zapata-Castro—hundreds of miles off the coast of Barbados. The boat did not display any country's flag. Members of the Coast Guard boarded the vessel, where its captain informed them that the vessel could not claim any nationality and that the mission of the voyage was trafficking drugs. The Coast Guard did not locate any documentation on board the vessel that indicated that it was registered with a particular nation. After a search, the Coast Guard discovered over 600 kilograms of cocaine hidden in duffel bags stored beneath

wooden planks and covered by mattresses.[1]  The Coast Guard arrested the boat's

six crew members.[2]  None of the Appellants were on board.

Antonius, Lovell, and Zapata-Castro were not United States citizens.  In fact,

other than Antonius, who had been to the United States once on vacation in 2014,

they had not set foot on United States soil until they were extradited to be

prosecuted in this case.  The vessel did not originate in the United States, was not

bound for the United States, and was not intercepted in United States waters.

Appellants were arrested in Jamaica on October 25, 2018.  On November 8,

2018, the United States government charged each Appellant with one count of

conspiracy to violate the MDLEA by attempting to ship 624 kilograms of cocaine

from Guyana to the Netherlands in violation of the MDLEA, 46 U.S.C. §§ 70503

---

[1]  The Coast Guard also recovered a magazine with thirty rounds of ammunition.

[2]  Four of the crew members pled guilty to conspiring to distribute, or possess with intent to distribute, 500 or more grams of cocaine while onboard a vessel subject to the jurisdiction of the United States. *See, e.g.*, Gonzalez Plea Tr. at 5, *United States v. Gonzalez, et al.*, No. 1:18-cr-00601-PGG (S.D.N.Y. 2021) (ECF No. 120).  These four crew members were each sentenced to a five-year term of imprisonment.  Torres Judgment at 2, *id.* (ECF No. 236); Monasterio Judgment at 2, *id.* (ECF No. 239); Gonzalez Judgment at 2, *id.* (ECF No. 459); Maikel Judgment at 2, *id.* (ECF No. 496).  Two of the crew members pled guilty to conspiring to violate maritime drug laws.  One of these crew members was sentenced to a two-year term of imprisonment and the other was sentenced to time served.  Roopwah Judgment at 2, *id.* (ECF No. 238); Sucre Judgment at 2, *id.* (ECF No. 312).

and 70506(b). On November 30, 2018, Appellants were extradited to the Southern District of New York.

Appellants filed a motion to dismiss, arguing that charging them under the MDLEA violated their Fifth Amendment right to due process because (1) they were never on board a vessel that was subject to United States jurisdiction and (2) there was no nexus between their alleged criminal conduct and the United States. While the motion was pending, this Court decided *United States v. Alarcon Sanchez*, 972 F.3d 156 (2d Cir. 2020), which held that foreign, land-based conspirators who planned to transport drugs from Colombia to Australia without traveling through United States waters—but who had minor contact with the United States as part of their efforts to further the conspiracy—could be prosecuted under the MDLEA. The district court asked the parties for supplemental briefing in light of that decision. Largely based on *Alarcon Sanchez*, the district court denied Appellants' joint motion to dismiss.

Each Appellant subsequently pled guilty. Antonius was sentenced to twelve years' imprisonment; Lovell was sentenced to eleven years' imprisonment; and Zapata-Castro was sentenced to thirteen years' imprisonment. Though each Appellant's plea agreement included an appeal waiver, the government conceded

that they were not foreclosed from appealing the issues presented in their motions to dismiss.

On appeal, all three Appellants again claim that their prosecution under the MDLEA denied them due process because their conduct lacked a nexus to the United States. They additionally argue, for the first time on appeal, that as applied to their case, Congress exceeded its authority under Article I of the Constitution in enacting the MDLEA.

## DISCUSSION

We affirm the decision of the district court. Appellants' conviction under the MDLEA did not violate their due process rights, nor did Congress overstep its powers under Article I when it enacted the MDLEA, as applied to the facts of Appellants' case.

## I. The MDLEA

The MDLEA prohibits knowingly or intentionally distributing, or possessing with intent to distribute, a controlled substance "[w]hile on board a covered vessel." 46 U.S.C. § 70503(a).

While the MDLEA's substantive prohibition contains "the locational limitation of 'on board a covered vessel,'" we held in *Alarcon Sanchez* that persons who are "not themselves . . . on board the covered vessel" may nevertheless be prosecuted under the MDLEA's attempt-and-conspiracy provision, 46 U.S.C. § 70506, for knowingly and intentionally conspiring to violate the MDLEA with others who were on board a covered vessel. *See* 972 F.3d at 164–65. Thus, Appellants concede that the MDLEA, as written, covers them. Their arguments are that—as applied to them—such MDLEA prosecutions violate the Constitution.

A "covered vessel" is one that is "subject to the jurisdiction of the United States." 46 U.S.C. § 70503(e)(1). The United States has jurisdiction over "a vessel without nationality." *Id.* § 70502(c)(1)(A). A vessel lacks a nationality where, as here, the captain or "individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel." *Id.* § 70502(d)(1)(B).

The MDLEA explicitly gives the United States jurisdiction over offenses committed "outside the territorial jurisdiction of the United States." *Id.* § 70503(b). Additionally, where "the offense was . . . committed upon the high

seas, or elsewhere outside the jurisdiction of any particular State or district," an individual in violation of Section 70503 "may be tried in any [United States] district." *Id.* § 70504(b)(2). Whether the vessel in question is subject to the jurisdiction of the United States is not an element of the offense; rather, it is a preliminary question for the trial judge to determine and it is the government's burden to show that the United States had jurisdiction over the vessel. *Id.* § 70504(a); *United States v. Prado*, 933 F.3d 121, 129–30 (2d Cir. 2019).

The parties do not seriously dispute that the vessel used in the drug-trafficking operation was stateless, that the vessel in question and those on board it were subject to the jurisdiction of the United States, or that the Appellants in this case were co-conspirators with those actually on board the vessel.

## II. Due Process

At issue in the instant case, therefore, is whether due process permits the MDLEA to be used to prosecute conspirators in drug-trafficking schemes who are not citizens of the United States, who act exclusively on foreign soil, who do not utilize contacts or resources in the United States, and who were not on board the seized vessel.

Appellants argue that allowing such individuals to be prosecuted under the MDLEA would be fundamentally unfair because, in their view, the law requires a nexus between Appellants' actions and the United States but, here, no nexus existed. Appellants support their argument by asserting that "[n]one of the conduct, the meetings, or the alleged instrumentalities of the offense occurred in or had any relation to the United States" nor did Appellants "inten[d] to have contact with the United States, or to cause any harm to the interests of the United States." Appellants' Br. at 19–20.

The government counters that under our Circuit's case law, no nexus is required to bring MDLEA prosecutions against persons involved in trafficking drugs on stateless vessels. The government further argues that, even were it required to show nexus, it could do so because the aim of its prosecution was to curtail drug trafficking on the high seas, which specifically threatens the security and societal well-being of the United States—and that this is nexus enough.

The district court agreed with the government. It did "not read the MDLEA, its legislative history, or relevant case law as requiring a nexus to the United States beyond this nation's compelling interest in 'curtailing international drug trafficking on the high seas.'" *United States v. Cardona-Cardona*, 500 F. Supp.

11

3d 123, 135 (S.D.N.Y. 2020) (quoting *Alarcon Sanchez*, 972 F.3d at 169). The

district court also explained that Appellants had fair warning that they might be

subject to prosecution in the United States because they knew that their conduct

was criminal and would therefore subject them to prosecution *somewhere*. *Id.* at

136.

Generally, "[i]n order to apply extraterritorially a federal criminal statute

to a defendant consistently with due process, there must be a sufficient nexus

between the defendant and the United States, so that such application would not

be arbitrary or fundamentally unfair." *United States v. Epskamp*, 832 F.3d 154, 168

(2d Cir. 2016) (quoting *United States v. Yousef*, 327 F.3d 56, 111 (2d Cir. 2003))

(alteration in original). When individuals who are not United States citizens act

on foreign soil, nexus is present where "the aim of [the] activity is to cause harm

inside the United States or to U.S. citizens or interests." *Id.* (quoting *United States

v. Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011)).

But in the context of the MDLEA, we have held that no showing of nexus

is required for the prosecution of individuals accused of trafficking drugs who

are actually on board a stateless vessel. This is so "because such prosecutions are

not arbitrary, since any nation may exercise jurisdiction over stateless vessels,

12

and they are not unfair, since persons who traffic drugs may be charged with knowledge that such activity is illegal and may be prosecuted somewhere." *United States v. Van Der End*, 943 F.3d 98, 106 (2d Cir. 2019).

*Van Der End*, however, deliberately left open the question of whether proof of nexus was constitutionally required to determine whether "persons who are not on board a vessel without nationality may be prosecuted for violating the MDLEA." *Id.* at 105 n.4. A year later, when confronted with that very question in *Alarcon-Sanchez*, we considered the differences between "seafaring defendants" who "had forfeited their protections under international law and were therefore fair game for any nation to 'subject them to their laws'" and land-based conspirators who were "obviously subject" to the "jurisdiction and laws" of the country in which their actions in advancing the conspiracy took place. 972 F.3d at 168–69 (quoting *Van Der End*, 943 F.3d at 105). Ultimately, we declined to decide whether nexus was required in such circumstances. We instead held that the due process rights of the particular land-based conspirators in *Alarcon Sanchez* were not violated even assuming *arguendo* that a nexus requirement applied. *Id.*

13

For the same reason, we need not decide whether proof of nexus with the United States must be established in cases involving land-based conspirators using stateless vessels on the high seas to traffic drugs. That is because, even assuming a nexus requirement, the harm caused by drug trafficking on the high seas threatens the societal well-being of the United States. In enacting the MDLEA, Congress explicitly found that "trafficking in controlled substances aboard vessels is a serious international problem, is universally condemned, and presents a specific threat to the security and societal well-being of the United States." 46 U.S.C. § 70501. As we explained in *Alarcon Sanchez*, conspiring to traffic controlled substances presents the same threat to the security and societal well-being of the United States and, therefore, constitutes a sufficient nexus. *See* 972 F.3d at 169; *see also Epskamp*, 832 F.3d 154, 168 ("For non-citizens acting entirely abroad, a jurisdictional nexus exists when the aim of that activity is to cause *harm* inside the United States or *to U.S.* citizens or *interests*." (quoting *Al Kassar*, 660 F.3d at 118) (emphasis added)).

Appellants argue that our nexus determination in *Alarcon Sanchez* should not be adopted in this case because the facts in that case meaningfully differ from the facts here. Appellants point out that in *Alarcon Sanchez*, the actions of some

14

of the defendants in furtherance of the conspiracy involved contact with the

United States. And, in *Alarcon Sanchez*, we did mention that the conspirators in

that case "us[ed] a U.S.-registered vessel and procur[ed] false visas in the United

States." 972 F.3d at 169. But our decision did not rest on these connections with

the United States. Rather, our decision in *Alarcon Sanchez* depended on our

determination that international drug trafficking on the high seas is inherently

related to the specific interests of the United States and thus constituted adequate

nexus. *Id.*[3]

Our holding in *Alarcon Sanchez* also made clear that Appellants had

adequate warning that their actions could be prosecuted in the United States. In

*Alarcon Sanchez*, we held that the conspirators need not have understood that

their conduct would subject them to prosecution in the United States *specifically*,

as long as they knew their actions were criminal and could subject them to

---

[3] Recently, a district court in the District of Puerto Rico similarly recognized that "[p]recedent from sister jurisdictions suggests that the MDLEA extends to extraterritorial conspiracies (*i.e.* defendants who plan drug-trafficking ventures but never leave the country of origin)," when evaluating whether foreign, land-based defendants could be prosecuted under the MDLEA for planning to traffic drugs from Colombia to Portugal. *United States v. Serrano*, 618 F. Supp. 3d 70, 71–72 (D.P.R. 2022) (citing *Alarcon-Sanchez*, 972 F.3d at 165; *United States v. Ballestas*, 795 F.3d 138, 145 (D.C. Cir. 2015)) (ultimately holding that the defendants' motion to dismiss was not ripe for adjudication).

prosecution *somewhere*. *Id.* We explained that the conspirators' prosecution under the MDLEA was "neither arbitrary nor fundamentally unfair" because they "were aware that their scheme to transport cocaine on the high seas was illegal and could result in their criminal prosecution 'somewhere.'" *Id.* (quoting *Al Kassar*, 660 F.3d at 119). They, therefore, "were not ensnared by a trap laid for the unwary." *Al Kassar*, 660 F.3d at 119.

It is certainly plausible—and even likely—that Appellants never expected to be subject to prosecution by the United States even though they may have expected to be subject to prosecution by Guyana or Jamaica, where their actions to further the conspiracy took place, or by the Netherlands, the planned destination for the contraband. But because Appellants understood that their efforts to traffic drugs would subject them to criminal liability in some jurisdiction, our case law clearly holds that they had notice consistent with due process to be prosecuted under the MDLEA in the United States. *See, e.g.*, *Alarcon Sanchez*, 972 F.3d at 169; *Epskamp*, 832 F.3d at 168–69.[4]

---

[4] Moreover, no specific proof is required to establish that perpetrators of international illegal drug trafficking know that their conduct is criminal. *See, e.g.*, *Van Der End*, 943 F.3d at 106 ("[W]e have little trouble concluding that those who participate in international drug trafficking

As we held in *Alarcon Sanchez*, we conclude here that, "in light of the conspiracy's nexus to United States interests in eliminating drug trafficking on the high seas, and the fair warning we ascribe to those that participate in such conspiracies, . . . due process was not offended by defendants' MDLEA prosecutions." 972 F.3d at 169.[5]

## III. Article I

Appellants claim that applying the MDLEA to their foreign, land-based activities is an invalid exercise of congressional power under Article I. Appellants did not raise this argument before the district court. We nevertheless

---

activity are aware that such conduct is illegal."). Even so, the record supports that Appellants knew their conduct was illegal. They used code names for the vessels they planned to use to transport the drugs, and they planned for the crew on the final boat which would deliver the cocaine to the shores of the Netherlands to disguise themselves as fishermen.

At oral argument, Appellants argued that the fact that it was a *DEA informant* who arranged for the co-conspirators to use a stateless vessel, thereby subjecting the vessel to the jurisdiction of the United States, should suffice to establish that Appellants had not intended to be subject to United States jurisdiction. That argument is foreclosed by *Alarcon Sanchez*. In that case, it was "[a]t the direction of Homeland Security[] [that] the cooperating source" arranged use of the drug vessel, and yet the foreign, land-based conspirators were still subject to the MDLEA's reach. *Alarcon Sanchez*, 972 F.3d at 160.

[5]  We reserve for another day the question of whether foreign, land-based conspirators trafficking drugs not destined for the United States may be prosecuted under the MDLEA if they specifically planned to use a vessel that had been properly registered with a foreign nation, but where the crew defied that plan.

choose to consider it,[6] and review the district court's decision for plain error. Fed. R. Crim. P. 52(b). Plain-error review requires that we determine whether (1) there was an error, (2) the error was clear or obvious and not subject to reasonable dispute, (3) the error affected Appellants' substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Marcus*, 560 U.S. 258, 262 (2010).

The Constitution's Define and Punish Clause gives Congress the power to "define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. Const. art. I, § 8, cl. 10. This Clause grants Congress three individual powers: (1) to define and punish piracy, (2) to define and punish felonies committed on the high seas, and (3) to define and punish offenses against the Law of Nations. *Alarcon Sanchez*, 972 F.3d at 169–70. We conclude that the district court did not err when it held that Appellants may be prosecuted under the MDLEA because doing so does not exceed Congress's power to punish felonies on the high seas.

---

[6]   *See United States v. Bodnar*, 37 F.4th 833, 843 (2d Cir. 2022).

Appellants reason that they could only have been constitutionally subject to the MDLEA as a result of Congress's power to punish offenses against the Law of Nations. They argue that, because they were never physically on the high seas themselves, Congress's power to punish felonies on the high seas cannot subject them to prosecution under the MDLEA. Appellants further claim that, because their crime does not concern piracy, the congressional power to punish piracy also cannot provide Congress the means to subject them to the MDLEA's reach. And, relying on an Eleventh Circuit case, *United States v. Bellaizac-Hurtado*, 700 F.3d 1245 (11th Cir. 2012), they contend that the congressional power to punish offenses against the Law of Nations does not allow Congress to punish drug trafficking because drug trafficking is "not a violation of customary international law." *Id.* at 1258.

Appellants' reasoning is misguided. They are incorrect that only the congressional power to punish offenses against the Law of Nations applies to the prosecution of their conduct. Instead, we have held that punishing drug trafficking on the high seas "falls squarely within [Congress's] constitutional power to punish *felonies* on the high seas," including the punishment of conspirators on land. *Alarcon Sanchez*, 972 F.3d at 170 (emphasis added). In so

19

holding, our Court considered, and rejected, the same argument Appellants make here: that because Congress's power to punish felonies "contains locational language: the high seas," "the MDLEA cannot constitutionally be construed to reach [the] conduct" of a defendant who was not personally "on the high seas in connection with the charged conspiracy." *Id.* at 167. Thus, just as *Alarcon Sanchez* decides Appellants' due process challenge, that case decides their Article I challenge.

Moreover, the case Appellants rely on, *Bellaizac-Hurtado* and its sequela, are in fact consistent with our precedent. In *Bellaizac-Hurtado*, the defendants were in *Panamanian* waters and not on the high seas. 700 F.3d at 1248–49. And for that reason only, Congress's ability to punish felonies on the high seas was held not to have been the source of its power to proscribe their conduct as it can, and does, here. Indeed, the Eleventh Circuit has since explained (by summary order) that where the MDLEA has been invoked under the congressional power to punish felonies on the high seas, as here, "the assertion of jurisdiction over stateless vessels on the high seas in no way transgresses recognized principles of international law." *United States v. Macias*, 654 F. App'x 458, 461 (11th Cir. 2016) (quoting *United States v. Marino–Garcia*, 679 F.2d 1373, 1382 (11th Cir. 1982)).

Furthermore, when we read the language of the MDLEA to cover land-based conspirators in *Alarcon Sanchez*, we noted that the Necessary and Proper Clause of the Constitution allows the application of the MDLEA to land-based conspirators. 972 F.3d at 167–68. And we there held that it is "necessary and proper for Congress to confer federal jurisdiction over all conspirators, both those who go on the seas and those who remain on land." *Id.* at 167. That is because "prosecuting MDLEA conspirators who *are not* on the high seas is a means that is rationally related to the legitimate end of prosecuting MDLEA conspirators who *are* on the high seas." *Id.* (emphasis added).

To hold otherwise, moreover, would be to encourage a sentencing scheme that punishes only the lowest-level members of the conspiracy—those who physically transport the drugs on the high seas—while the masterminds on land—usually with more power, money, and resources—operate free from the MDLEA's reach. *See id.* at 166 (declining to read "the attempt-and-conspiracy provision" in a way that "would immunize" foreign land-based conspirators—who are often "the higher-ups that engineered the shipment in the first place"—because such a reading would "undercut[] Congress's findings on the scope and gravity of the threat posed by drug trafficking aboard vessels"). And this would

contradict the "long[-]recognized" common-law principle that "persons who intentionally direct or facilitate the crimes physically executed by others must be held accountable for their actions." *United States v. Hoskins*, 902 F.3d 69, 77 (2d Cir. 2018).

Lastly, Appellants have raised one claim that was not addressed in *Alarcon Sanchez*—that Congress exceeded its Article I powers by expanding the definition of "stateless vessel" in the MDLEA beyond its internationally recognized definition. Appellants, however, acknowledged at oral argument that they know of no authority to support this claim.

Appellants originally relied on a decision of the First Circuit for support in their briefing. But that decision has since been withdrawn. *See United States v. Dávila-Reyes*, 23 F.4th 153 (1st Cir. 2022), *withdrawn by*, 38 F.4th 288 (2022) (granting rehearing en banc). And, the First Circuit had recognized even in its withdrawn decision the constitutionality of the provision under which Appellants were prosecuted—specifically, that Congress's passage of § 70502(d)(1)(B), deeming a vessel stateless "when the individual in charge of a

vessel fails to make a claim of nationality," is "clearly consistent with international law." *Id.* at 186–87.[7]

Moreover, our own Court's law is clear. We have long read the United Nations Convention on the High Seas to indicate that a vessel "which does not sail under the flag of one state to whose jurisdiction it has submitted" is "a stateless vessel" and "may not claim the protection of international law and does not have the right to travel the high seas with impunity." *United States v. Pinto-Mejia*, 720 F.2d 248, 260 (2d Cir. 1983).

Since no authority supports Appellants' argument that Congress exceeded its Article I powers by extending the MDLEA to foreign, land-based conspirators orchestrating the trafficking of drugs aboard a stateless vessel, the district court did not err, let alone commit plain error, when it held Appellants could be prosecuted under the MDLEA.

**CONCLUSION**

---

[7] Indeed, even had *Dávila-Reyes* remained good law in the First Circuit, it would be inapposite. The panel opinion in *Dávila-Reyes* held that Congress overstepped its Article I powers when it passed § 70502(d)(1)(C), which deemed stateless those vessels whose captains make "a claim of nationality recognized by international law," but where "the identified country neither confirms or denies that claim." 23 F.4th at 187. And that is not the statutory mechanism for determining statelessness at issue in the instant case.

We have considered all of Appellants' other arguments and find them to be

without merit.  We **AFFIRM** the decision of the district court.