# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued March 15, 2024          Decided September 6, 2024

No. 23-3057

UNITED STATES OF AMERICA,
APPELLEE

v.

MICHAEL ANGELO RILEY,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cr-00628-1)

---

*Christopher Macchiaroli* argued the cause for appellant. With him on the briefs was *Emma Mulford*.

*Mark Hobel*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Chrisellen R. Kolb* and *Nicholas P. Coleman*, Assistant U.S. Attorneys.

Before: PILLARD, CHILDS and GARCIA, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*: Michael Riley, an experienced former Capitol Police officer, appeals his conviction for obstruction of a federal grand jury investigation of the January 6, 2021, attack on the United States Capitol. The day after the attack, Riley tipped off one of the rioters that "everyone who was in the [Capitol] building is going to be charged" and urged him to "take down" a Facebook post acknowledging that he had been inside the building. When Riley learned his communication with that individual might be investigated, he tried to cover it up by deleting direct messages from his Facebook account and calls from his phone's call log. A jury convicted Riley of one count of obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(1) based on the deletions but was unable to reach a verdict on another obstruction count based on the underlying tip. The court sentenced him to a period of probation and a fine.

Riley appeals his conviction. His central claim is that the government failed to establish that an official grand jury proceeding was foreseeable or that he deleted his Facebook direct messages to affect any such proceeding. He asserts various other trial errors that he links to those asserted shortcomings. We have considered each of Riley's challenges and, because none succeeds, we affirm.

## I.

### A.

Capitol Police Officer Michael Riley was on duty near the United States Capitol on January 6, 2021, when thousands of people converged there in an effort to halt the certification of the electoral count. The following morning, Riley posted on Facebook that "[e]very protester that assaulted an officer yesterday, committed property damage, and broke into the

Capitol building should be charged federally in district court. If we don't send a message, it will surely happen again." Trial Tr. 29:23-30:1 (J.A. 451-52). Within an hour of that post, Riley learned that his Facebook friend Jacob Hiles had uploaded and commented in detail on a video recorded during the riot. Hiles's post described the video as portraying "the craziest, most violent part of what [he] witnessed earlier at the Capitol building," Trial Tr. 20:20-21 (J.A. 442), and claimed that he, "like hundreds or thousands of other people," was caught up in a crowd that was "funneled" into the Capitol Building on January 6. Trial Tr. 27:4, 11-14 (J.A. 449). In a private message, Riley responded to Hiles: "Hey Jake, im [sic] a capitol police officer who agrees with your political stance. Take down the part about being in the building they are currently investigating and everyone who was in the building is going to [be] charged. Just looking out!" GX 202 (J.A. 1163).

Riley continued to communicate with Hiles on Facebook for several days. The pair exchanged hundreds of messages discussing the law enforcement investigation into the riots and personal matters like their shared interest in fishing. On January 16, Riley messaged Hiles that "[t]heyre arresting dozens of people aday. Everyone that was in the building, engaged in violent acts, or destruction of property…and theyre all being charged federally with felonies." GX 202 at 57, *United States v. Riley*, No. 21-628 (D.D.C. June 29, 2022) (ellipsis, spelling, and punctuation as in original); *see* Indictment ¶ 13.b. (J.A. 19); Trial Tr. 46:11-14 (J.A. 941). Then, on January 20, Hiles wrote Riley that the FBI had arrested and interviewed him. He revealed that the "FBI was very curious that I had been speaking to you" and "[i]f they haven't already asked you about me, they are gonna." Trial Tr. 89:17-19 (J.A. 511).

4

The next day, Riley deleted his entire string of Facebook messages with Hiles and removed two calls with Hiles from his cell phone's call log. He then sent a message to Hiles, which he did not delete:

> Hey, Jake, another mutual friend was talking about you last night. I tried to defend you, but then he showed me a video of you in the Capitol smoking weed and acting like a moron. . . . I was shocked and dumbfounded since your story of getting pushed in the building with no other choice now seems not only false, but is a complete lie. I feel like a moron for believing you. . . . I was so mad last night. I deleted all your posts. But I wanted to text you this morning and let [you] know that I will no longer be conversing with you.

Trial Tr. 99:10-24 (J.A. 521).

Four days later, the Capitol Police Office of Professional Responsibility sent Riley a letter informing him that a disciplinary complaint had been filed against him. Riley shared the letter with his union representative and, when the representative asked whether Riley knew what the complaint was about, he replied: "If I had to guess, for telling [Hiles] to take down [a video] from the Capitol breach. But I did it on private message, so it should be like a private conversation, but who knows. He told me that he told the FBI that he talked to me." Trial Tr. 109:2-6 (J.A. 531).

**B.**

A federal grand jury in the District of Columbia indicted Riley on two felony counts of obstruction of an official proceeding in violation of 18 U.S.C. § 1512. Section 1512(c)(1) imposes liability on anyone who "corruptly alters,

destroys, mutilates, or conceals a record, document, or other object . . . with the intent to impair the object's integrity or availability for use in an official proceeding." Section 1512(b)(2)(B) imposes liability on anyone who "knowingly uses intimidation, threatens, or corruptly persuades another person" to do the same. The statute defines "official proceeding" to include, among other things, federal court proceedings, such as a federal grand jury. 18 U.S.C. § 1515(a)(1)(A).

The indictment charged Riley with attempting to impair the availability of evidence for use by a federal grand jury investigating the January 6 breach of the U.S. Capitol. Indictment ¶¶ 2, 19-22 (J.A. 16, 20-21). Count One alleged that Riley did so by urging Hiles, in violation of section 1512(b)(2)(B), to take down a Facebook post acknowledging that he had been inside the Capitol building during the riot. Count Two alleged that Riley deleted his own Facebook messages to destroy evidence of his advice to Hiles, in violation of section 1512(c)(1).

Riley unsuccessfully moved to dismiss the indictment, arguing that it failed to identify a foreseeable "official proceeding" that he intended to obstruct because it only referenced a "law enforcement investigation," which Riley contended the relevant provisions do not protect. The district court held that the indictment adequately alleged that Riley intended to make evidence unavailable to a federal grand jury that foreseeably was or would be convened to investigate crimes committed during the breach of the Capitol on January 6. The court noted that the statute defines "official proceeding" to include "a proceeding before . . . a Federal grand jury," Order at 3-4, *United States v. Riley*, No. 21-628 (D.D.C. June 29, 2022), ECF No. 37 (quoting 18 U.S.C. § 1515(a)(1)(A)) (J.A. 149-50), and reasoned that Riley's

challenge to the charges' reference to a "federal investigation" ignored the indictment's "detailed factual allegations" which specify that the referenced "federal investigation" was the January 6 probe "for which a federal grand jury was convened in the District of Columbia," *id*. at 2, 5 (J.A. 148, 151).

Seeking support for his theory that no grand jury was foreseeable when he deleted his messages, Riley sought to compel pretrial discovery from the government about the scope and timing of the grand jury referenced in the indictment. The district court granted the motion in part. The court required the government to produce information about when a grand jury was convened and whether the Capitol Police were aware of it. But the court denied as irrelevant Riley's request for information about prosecutions of unlawful entries to the Capitol before the events of January 6, 2021.

The government accordingly informed defense counsel that it had convened a grand jury on January 8, 2021, "largely for the purpose of considering Capitol attack cases," J.A. 102 (quoting May 13, 2022, DOJ Ltr. at 1), and it supported that assertion with a sample January 6 indictment returned by that grand jury. When a question arose during the trial testimony of the government's witness, Special Agent Hart, as to whether he had personal knowledge of the timing of the grand jury proceeding, the district court chose to take judicial notice of the undisputed fact that "[a] federal grand jury was empaneled in the District of Columbia on January 8th, 2021, and it considered matters related to the events of the United States Capitol on January 6, 2021." Trial Tr. at 163:2-6 (J.A. 775).

The jury found Riley guilty on Count Two based on his deletion of his own messages but did not reach a verdict on

Count One based on his advice to Hiles to take down his Facebook post, resulting in a mistrial and dismissal of that count. Following trial, the district court addressed Riley's motions for judgment of acquittal and for a new trial on the count of conviction. Those motions largely recapitulated Riley's earlier motion to dismiss, this time claiming that the government's evidence identified neither a foreseeable official proceeding nor the requisite nexus between that proceeding and Riley's deletion of his messages. The district court denied the motions and sentenced Riley to 24 months' probation, a $10,000 fine, and a $100 special assessment.

Riley now appeals his conviction on Count Two. We have jurisdiction over the appeal. *See* 28 U.S.C. § 1291. We review *de novo* legal questions that the defendant preserved, *United States v. Wilson*, 605 F.3d 985, 1003 (D.C. Cir. 2010); as to unpreserved claims, our review is limited to any plain error in the district court's judgment, *United States v. Webster*, 102 F.4th 471, 478 (D.C. Cir. 2024); Fed. R. Crim. P. 52(b).

**II.**

Riley's sole count of conviction is for obstruction of an official proceeding in violation of section 1512(c)(1). The government defends the jury's verdict on the ground that it lawfully charged and proved that Riley destroyed evidence of his communications with Hiles with intent to impair that evidence's availability to a grand jury empaneled to consider crimes committed in connection with the January 6 attack on the Capitol.

Section 1512(c)(1) makes it a felony offense to "corruptly" destroy a record "with the intent to impair the object's integrity or availability for use in an official proceeding." The proceeding need not have been "pending or

about to be instituted at the time of the offense." 18 U.S.C. § 1512(f)(1). However, to establish the requisite intent to obstruct, the government must allege and prove that an official proceeding was at least foreseeable to the defendant when he engaged in the obstructive conduct. *See Arthur Andersen LLP v. United States*, 544 U.S. 696, 707-08 (2005) (holding that knowingly corruptly persuading another to destroy records to interfere with an official proceeding in violation of 18 U.S.C. § 1512(b)(2)(A) requires proof that the proceeding was, if not "pending or about to be instituted," at least foreseen when the defendant acted); *see also Marinello v. United States*, 584 U.S. 1, 4, 13 (2018) (holding that "corruptly… endeavoring to obstruct or impede the due administration of the Internal Revenue Code" in violation of 26 U.S.C. § 7212 requires that the obstructed proceeding is at least "reasonably foreseeable" by the defendant when he engaged in the obstructive conduct). All circuits that have considered the issue agree that section 1512(c) requires at least a "reasonably foreseeable official proceeding." *United States v. Lonich*, 23 F.4th 881, 905 (9th Cir. 2022) (collecting cases). The government must also show that the allegedly obstructive conduct "ha[d] a relationship in time, causation, or logic with the proceeding[]," such that the defendant knew his intentional acts "ha[d] the natural and probable effect of interfering" with the proceeding. *See United States v. Aguilar*, 515 U.S. 593, 599 (1995) (internal quotation marks omitted); *see also Arthur Andersen*, 544 U.S. at 707-08.

This appeal raises five challenges to Riley's conviction. Riley's core theory is that the government failed to allege or prove his obstructive intent because it did not identify any foreseeable January 6 grand jury proceeding nor how Riley's deletion of his direct messages would tend to interfere with that proceeding. The record is to the contrary. Riley was a veteran Capitol Police officer concededly aware of the role of

grand juries in the criminal process, and his own messages showed he expected felony prosecutions of unauthorized entrants into the Capitol building on January 6. The indictment's allegations and the trial evidence sufficed to show that it was reasonably foreseeable that at least one grand jury would be—and was—empaneled to hear evidence of crimes relating to the January 6 Capitol breach. They also showed that Riley knew his deletion of records of his communications with Hiles would tend to impair the availability of that evidence to the grand jury. Because each of Riley's challenges rests on that core, flawed argument, each fails.

**A.**

Riley first challenges the sufficiency of the indictment. A defendant in a criminal case may move to dismiss an indictment before trial for "lack of specificity" and "failure to state an offense," Fed R. Crim. P. 12(b)(3)(B)(iii), (v), including when the statute under which he is charged does not apply to his alleged conduct. *See Hamling v. United States*, 418 U.S. 87, 117 (1974).

Riley argues that the district court should have dismissed the indictment for failure to allege obstruction of an "official proceeding," such as a federal grand jury proceeding. *See* 18 U.S.C. § 1515(a)(1)(A) (defining "official proceeding" for purposes of section 1512 to include a federal grand jury). As Riley reads it, the indictment alleges only obstruction of a general law enforcement investigation, which he asserts the statute does not cover. The government does not address whether a bare law enforcement investigation is an "official proceeding" for purposes of section 1512 but defends the sufficiency of the indictment on the ground that it alleges intentional obstruction of a grand jury proceeding.

We hold that the indictment adequately alleges that Riley intentionally acted in a manner he knew had the likely effect of obstructing a reasonably foreseeable grand jury. In particular, it states that he sought to make evidence unavailable to the federal criminal investigation into the January 6 Capitol breach "for which a federal grand jury was convened in the District of Columbia." Indictment ¶ 2 (J.A. 16). And it quotes his direct message to Hiles warning that everyone who "was in the building" was "being charged federally with felonies," GX 202 at 57, *United States v. Riley*, No. 21-628 (D.D.C. June 29, 2022); Indictment ¶ 13.b. (J.A. 19),—a type of federal charge requiring a grand jury. We further hold that the indictment alleges the requisite nexus between that grand jury proceeding and Riley's deletion of direct messages with Hiles. Count Two, the sole count of conviction, alleged that Riley "deleted his [own] Facebook direct communications with [Hiles]" with the intent to make those messages unavailable to a grand jury investigating January 6. Indictment ¶¶ 2, 22 (J.A. 16, 21). That suffices to charge a violation of section 1512(c)(1). *See* Fed. R. Crim. P. 7(c); *United States v. Ballestas*, 795 F.3d 138, 148-49 (D.C. Cir. 2015).

Riley argues that the indictment is legally insufficient because it improperly equates a general law enforcement investigation, which is not an official proceeding under section 1512, with a grand jury proceeding, which is. But a federal grand jury proceeding is "an *ex parte* investigation to determine whether a crime has been committed." *United States v. Calandra*, 414 U.S. 338, 343-44 (1974). The indictment expressly identifies the criminal investigation conducted by the FBI and U.S. Capitol Police into the events of January 6 as one for which a "federal grand jury was convened in the District of Columbia," and, more broadly, alleges facts showing Riley anticipated felony prosecutions of

unauthorized entrants to the Capitol building on January 6. In sum, it adequately alleged a foreseeable federal grand jury proceeding to investigate offenses like Hiles's and determine charges, which Riley intended to obstruct by destroying evidence of his advice to Hiles.

**B.**

Riley next argues that the government's trial evidence was insufficient to support the verdict. When assessing the sufficiency of the evidence, we "review the evidence *de novo*, but consider it in the light most favorable to the government. We will affirm a guilty verdict where *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Shi*, 991 F.3d 198, 205 (D.C. Cir. 2021) (formatting modified); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Riley contends there was insufficient evidence of either a foreseeable official proceeding or a nexus between that proceeding and his deletion of Facebook messages. We hold that the evidence, considered in the light most favorable to the government, readily supports the jury verdict.

The district court instructed the jury that the "official proceeding that is alleged to be the object of Count Two is a federal grand jury proceeding resulting from the January 6 breach of the U.S. Capitol," and that "the official proceeding must be a grand jury proceeding, not simply an FBI investigation." Jury Instructions at 4-5 (J.A. 1026-27). The jury responded with a guilty verdict on Count Two. The trial record, viewed in the light most favorable to the government, readily supports a rational jury finding that the requisite "official proceeding" was foreseeable to Riley.

To establish that the Facebook messages Riley sought to conceal related to an "official proceeding" under section

1512, the government's evidence showed that Riley, a veteran Capitol Police officer, had reason to think that a grand jury would investigate January 6 crimes like Hiles's unauthorized entry into the Capitol. For example, Riley posted on Facebook on January 7 that riot participants "should be charged federally in district court," and direct messaged Hiles that "everyone who was in the building is going to [be] charged." Trial Tr. 29:23-30:1 (J.A. 451-52); Trial Tr. 37:1-4 (J.A. 459). Days later, Riley direct messaged Hiles that various categories of January 6 offenders, including everyone who "was in the building," was "being charged federally with felonies," GX 202 at 57, *United States v. Riley*, No. 21-628 (D.D.C. June 29, 2022); *see* Trial Tr. 46:11-14 (J.A. 941). During cross-examination, Riley acknowledged that, based on his law enforcement experience, he understood that "a grand jury makes charging decisions for felonies" and that he "foresaw felonies being charged" for those who entered the Capitol on January 6. Trial Tr. 64:24-25 (J.A. 959); Trial Tr. 66:4-22 (J.A. 961); *see generally United States v. Ahrensfield*, 698 F.3d 1310, 1326 (10th Cir. 2012) (noting that foreseeability of a grand jury proceeding was supported by evidence of the defendant's law enforcement experience and familiarity with grand jury procedures).

Riley responds that no more than a general law enforcement investigation was foreseeable. His own messages undercut that argument. A jury could reasonably infer from Riley's having warned Hiles that "dozens of people" were "being charged federally with felonies"— including "everyone that was in the building"—that Riley knew felony charges were imminent and, based on his experience, that a federal grand jury would have to bring those charges. GX 202 at 57, *United States v. Riley*, No. 21-628 (D.D.C. June 29, 2022); Trial Tr. 46:11-14 (J.A. 941).

Riley also objects that he was ultimately "indicted by a separate grand jury" from the one the government accuses him of obstructing. Riley Br. 39-40. He claims the conviction must be vacated because the particular grand jury the indictment identifies was not the grand jury empaneled months later that eventually indicted him for obstruction. Section 1512, however, does not require proof that Riley was indicted by the grand jury he obstructed, nor that the one he obstructed was "pending or about to be instituted at the time of the offense." 18 U.S.C. § 1512(f)(1). What the statute requires is that a grand jury proceeding was foreseeable to Riley when he deleted his messages in an effort to obstruct it. *See Arthur Andersen*, 544 U.S. at 707-08. The evidence shows it was.

Riley next argues that because he learned that Hiles was charged with misdemeanors before he deleted his messages, the government failed to prove it was foreseeable that a federal grand jury, which is unnecessary for misdemeanor charges, would become involved in Hiles's case or seek Riley's messages. *See* Trial Tr. 46:20-47:10 (J.A. 941-42) (Hiles messaging Riley about his misdemeanor warrants). Again, the evidence at trial supports an inference that Riley anticipated a grand jury proceeding even after Hiles's arrest on misdemeanor charges. Riley testified, for example, that he was aware that federal criminal cases sometimes "began as misdemeanors and ended as felonies." Trial Tr. 70:23-73:19 (J.A. 965-68). He also discussed Hiles's case on January 20 with another friend on Facebook, opining in response to that person's reference to Hiles's misdemeanor warrants "I thought everyone was getting charged with felonies." Trial Tr. 92:13-16 (J.A. 514). There is no evidence that Riley no longer thought so when he deleted the messages and call log from his Facebook account.

Riley finally insists that, even if he could have foreseen a grand jury investigating Hiles for entering the Capitol, the evidence was inadequate because the material he deleted fell outside the foreseeable scope of such an investigation. We are unpersuaded. A grand jury's investigatory scope foreseeably includes attempts to obstruct its own proceedings. A Capitol Police officer's messages with a January 6 offender would fall within the scope of a grand jury convened to investigate crimes relating to the Capitol breach; indeed, Riley knew that any January 6 grand jury would cast a wide net and warned Hiles that investigators were "going through everything." Trial Tr. 53:1-2 (J.A. 475). Riley himself testified that he deleted the messages within a day of learning of the FBI's interest in him, in part because he was "concerned that the FBI was going to think . . . that I had something to do with January 6." Trial Tr. 97:6-9 (J.A. 992). A jury could thus rationally infer that it was foreseeable to Riley that a January 6 grand jury investigation might eventually seek his messages with Hiles.

To prove the nexus between Riley's acts and a foreseeable grand jury, the government showed that Riley understood that interference with a grand jury's investigation of January 6 was a "natural and probable effect" of his deletion of his direct messages with Hiles. *See Aguilar*, 515 U.S. at 599. On January 7, Riley suggested Hiles take down his Facebook post acknowledging having entered the Capitol building, cautioning Hiles that "[t]hey are currently investigating and everyone who was in the building is going to [be] charged." Trial Tr. 37:1-4 (J.A. 459). The two men continued to exchange Facebook messages until Hiles was arrested and told Riley on the evening of January 20th that "[t]he FBI was very curious that I had been speaking to you." Trial Tr. 89:17-19 (J.A. 511). Early the following morning, Riley deleted his entire Facebook message string with Hiles.

Trial Tr. 101:2-103:11 (J.A. 523-25). Riley also removed from his call log records of his phone calls with Hiles. Trial Tr. 103:12-105:24 (J.A. 525-27). He then sent private Facebook messages to other people who knew the two of them had spoken, distancing himself from Hiles.

Riley insists that his deletion of messages could not have affected the January 6 grand jury because, by the time he deleted them, the FBI had identified Hiles, charged him, and searched his phone. A defendant need not, however, be "successful in impeding or obstructing justice . . . so long as his acts had the natural and probable consequence of interfering with" a foreseeable official proceeding. *United States v. Martinez*, 862 F.3d 223, 238 (2d Cir. 2017), *vacated on other grounds by Rodriguez v. United States*, 139 S. Ct. 2772 (2019); *accord United States v. Pugh*, 945 F.3d 9, 22 (2d Cir. 2019). Moreover, even after Hiles was caught, Riley expressed concern that law enforcement would think he had "something to do with January 6." Trial Tr. 97:6-9 (J.A. 992). That evidence supports an inference that, even after Hiles was arrested, Riley sought to hide his messages from the grand jury.

Riley's post-argument submission of the Supreme Court's recent decision in *Fischer v. United States*, 144 S. Ct. 2176 (2024), does not resuscitate his challenge. *Fischer* reads section 1512(c)(2)'s residual clause to prohibit conduct that "impaired the availability or integrity for use in an official proceeding of records, documents, [or] objects . . . or attempted to do so." *Id.* at 2190. If anything, *Fischer* affirms that Riley's offense—destroying evidence pertinent to a grand jury investigation—is exactly the type of conduct covered by section 1512(c).

16

## C.

Riley further asserts the verdict cannot stand because the government's trial evidence materially diverged from the allegations of the indictment. He argues that the proof constructively amended and prejudicially varied from the indictment. Because Riley raised neither challenge in district court, we review his claims for plain error only. *See United States v. Lawton*, 995 F.2d 290, 294 (D.C. Cir. 1993); Fed. R. Crim. P. 52(b).

The doctrines regarding amendments and variances have distinct roles.

An amendment deprives the defendant of the "right to be tried upon the charge in the indictment as found by the grand jury and hence subjected to its popular scrutiny." *Gaither v. United States*, 413 F.2d 1061, 1071-72 (D.C. Cir. 1969). When an indictment is amended either explicitly (by the trial judge) or constructively (by evidence and jury instruction), the allegations are altered without the approval of the grand jury. *Stirone v. United Sates*, 361 U.S. 212, 215-16, 218-19 (1960); *United States v. Lorenzana-Cordon*, 949 F.3d 1, 4 (D.C. Cir. 2020). To support a claim of constructive amendment, the defendant must "show that the evidence presented at trial *and* the instructions given to the jury so modified the elements of the offense charged that the defendant may have been convicted on a ground not alleged by the grand jury's indictment." *Lorenzana-Cordon*, 949 F.3d at 5-6 (emphasis in original) (quoting *United States v. Toms*, 396 F.3d 427, 436 (D.C. Cir. 2005)). Because "the concept of harmless error has not been applied to amendments," no showing that an amendment was prejudicial is required. *Lorenzana-Cordon*, 949 F.3d at 4-5 (quoting *Gaither*, 413 F.2d at 1072). Riley acknowledges that the jury

instructions comported with Count Two of the Indictment. *See* Riley Br. 39. His constructive amendment claim thus fails at the gate.

A variance, in contrast, is a mismatch between the allegations of the indictment and the proof, which "deprive[s] the defendant of notice of the details of the charge against him and protection against reprosecution." *Gaither*, 413 F.2d at 1072. In a variance case, "the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *Lorenzana-Cordon*, 949 F.3d at 4 (quoting *Gaither*, 413 F.2d at 1071). We will reverse a conviction based on a variance only if the error has a "substantial and injurious effect or influence" on the jury's verdict. *Lorenzana-Cordon*, 949 F.3d at 4.

Riley asserts that the government's proof at trial of his "desire to protect himself" varied from the indictment's tacit focus on a desire to protect Hiles. Riley Br. 54. But the indictment did not spell out Riley's underlying motive, nor did it need to. Establishing the requisite state of mind—intent to interfere with the availability of evidence for use in an official proceeding—does not depend on evidence of the defendant's personal reasons for engaging in such interference. The distinction Riley sees could not support a claim of variance.

The indictment alleged that Riley meant to obstruct a foreseeable January 6 grand jury proceeding. As we explained, the evidence readily supports those allegations. Riley's messages formed the heart of the government's case at trial, and did not differ from the indictment, which quoted many of those same messages. *See* Indictment at 2-5 (J.A. 17-20). And the fact that Riley was eventually charged by a

separate grand jury from the one specified in the indictment does not constitute a variance. The indictment alleged that Riley anticipated that felonies would be charged for conduct like Hiles's, and that Riley deleted his messages with an intent to obstruct a federal grand jury resulting from the January 6 breach of the U.S. Capitol. Indictment ¶¶ 2, 13 (J.A. 16, 18-19). As it happened, more than one such grand jury was convened. The jury instructions tracked the indictment's allegations, and the evidence at trial proved the conduct took place as alleged.

**D.**

Riley next objects to the district court's partial denial of his pretrial motion to compel discovery. We review the district court's discovery orders for abuse of discretion, *United States v. Butler*, 924 F.2d 1124, 1130 (D.C. Cir. 1991), and we "will not reverse unless the alleged error resulted in prejudice to the defendant[]'s substantial rights," *United States v. Mejia*, 448 F.3d 436, 444 (D.C. Cir. 2006).

Riley claims the district court abused its discretion in denying discovery of documents related to specifics about the grand jury proceeding identified in the indictment, including the origin and charged scope of that proceeding. But whether that grand jury ultimately indicted Hiles (or Riley) is immaterial to the jury's finding that Riley sought to obstruct it. Riley also seeks "any internal communications between FBI agents as part of their investigation," which Riley argues could, if they confirmed the FBI already knew Hiles had been in the Capitol building, tend to rebut the nexus between Riley's message deletions and any grand jury investigation of Hiles. But Riley also wanted to protect himself, not just Hiles. And, in any event, Riley does not explain how internal FBI communications could bear on what Riley knew or

intended in January 2021. Riley has not shown that the district court's partial denial of discovery was an abuse of discretion, nor has he identified any resultant prejudice.

Riley also objects that the district court took judicial notice during trial that a January 6 grand jury was empaneled and began proceeding as soon as January 8, 2021. Trial Tr. 163:2-13 (J.A. 775). Contrary to Riley's contention on appeal, the district court's judicial notice relied only on judicial records already disclosed to him. Trial Tr. 125:4-12 (J.A. 737); *see Veg-Mix, Inc. v. U.S. Dep't of Ag.*, 832 F.2d 601, 607 (D.C. Cir. 1987) (allowing courts to take judicial notice of official court records). And, as we note above in connection with Riley's claim of evidentiary insufficiency, the government was required to prove only that Riley's conduct had a nexus to a foreseeable official proceeding. 18 U.S.C. § 1512(f)(1). The district court accordingly acted within its sound discretion in denying discovery into the precise scope of the federal grand jury convened on January 8 to charge felonies committed in connection with the January 6 attack on the Capitol.

Riley also claims that the government violated the Jencks Act by withholding "internal communications between FBI agents"—specifically, prior statements of Special Agent Hart that Riley surmises must exist because Hart testified at trial as a witness familiar with the January 6 grand jury. *See* Riley Br. 51; Riley Reply Br. 23. The Jencks Act imposes an affirmative duty on the government to disclose any prior "statement" made by a prosecution witness that "relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). But the government need not "sift through every record" in the absence of a defendant's "colorable claim" that the government withheld "a specific document or set of documents contain[ing] Jencks statements." *United*

*States v. Moore*, 651 F.3d 30, 75 (D.C. Cir. 2011). Because Riley failed to timely make any colorable Jencks Act claim in the district court that might have encompassed prior statements of Hart, his claim is unpreserved and subject to plain-error review. *United States v. Brodie*, 871 F.2d 125, 130 (D.C. Cir. 1989).

Riley did not seek potential Jencks material regarding Special Agent Hart until the trial was completed and appeal contemplated. In a post-trial letter to the government objecting that it had not met its discovery obligations, Riley's counsel requested certain items. As relevant here, counsel asserted that, because Special Agent Hart was one of the government's principal witnesses relating to the grand jury investigation into the January 6 crimes, and because defense counsel had asked the government before trial to review the FBI messaging system for Jencks Act material, counsel thought the "scope" of the government's production of Hart's messages "should have been significant." Riley Discovery Ltr. at 2 (J.A. 1150). The absence of any prior statement by Hart in what the government produced apparently led defense counsel to the belated inference that the government withheld material in its possession in violation of the Jencks Act. That inference alone does not show any substantial prejudice that could support a determination of plain error.

## E.

Finally, Riley asserts that the district court's conduct of the trial "gave the appearance of partiality" requiring reversal. Riley Br. 55. That claim is entirely baseless. "The threshold for a showing of bias is high," *United States v. Carson*, 455 F.3d 336, 355 (D.C. Cir. 2006) (per curiam) (quoting *United States v. Edmond*, 52 F.3d 1080, 1099 (D.C. Cir. 1995) (per curiam)), reserved for circumstances that "reveal such a high

degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Nothing Riley identifies comes close to meeting that high bar.

Many of Riley's arguments in favor of reassignment for purposes of any further proceedings boil down to disagreements with the district judge's rulings. Unfavorable rulings, however, "almost never constitute a valid basis for a bias or partiality motion," and none of the examples Riley provides tends to support any allegation of bias. *Liteky*, 510 U.S. at 555 (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)). Riley also complains the district judge was unduly critical of his legal arguments throughout the trial, evidenced by comments from the bench that he views as harsh or dismissive. Riley ignores, however, that the government, too, drew critical comments from the district court. More importantly, none of the comments Riley cites was stated in the jury's presence or aimed at the defendant or the merits of his case. Every comment Riley identifies appears to be a genuine and fair effort to keep counsel on track and probe their arguments. *See Carson*, 455 F.3d at 358-59. The district court's occasional expressions of skepticism, not limited to positions taken by the defense, were entirely appropriate means of focusing the advocates on the issues in dispute in a manner helpful to the court.

We reject the contention that the district judge evinced partiality in overseeing his case.

### III.

For these reasons, we affirm the judgment of conviction.

*So ordered.*